JOANNE MORIN *vs.* COMMISSIONER OF PUBLIC WELFARE.

Worcester. January 11, 1983. — May 16, 1983.

Present: HALE, C.J., ROSE, & WARNER, JJ.

*Public Welfare. Aid to Families with Dependent Children. Words,*
"Living with," "Court committed."

Under applicable Federal and State regulations, a child in the custody of
the Department of Social Services under a temporary emergency order
issued pursuant to G. L. c. 119, § 24, was considered to be "living
with" her mother, for purposes of the mother's continued eligibility for
assistance under the Aid to Families with Dependent Children pro-
gram, pending the adjudication under G. L. c. 119, § 26, of a care
and protection petition. [25-27]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 17, 1981.

The case was heard by *Meagher,* J., on motion for sum-
mary judgment.

*Allan R. Fierce* for the plaintiff.

*John P. Graceffa,* Assistant Attorney General, for the
defendant.

WARNER, J.   The case before us grew out of the following
sequence of events.   On September 3, 1981, the Department
of Social Services (DSS) brought a petition under G. L.
c. 119, § 24, in a juvenile session of a District Court alleging
that the four minor children of the plaintiff were in need of
care and protection.   On the same day, after an ex parte
hearing, a temporary order was entered transferring
custody of the children from the plaintiff to DSS.   On
September 8, 1981, after a hearing pursuant to § 24, at
which the plaintiff was present and represented by counsel,
the temporary order was extended to December 8, 1981, the
date set for hearing of the petition on the merits. See G. L.

c. 119, § 26. By notice dated September 10, 1981, the Department of Public Welfare (DPW) informed the plaintiff of its decision to terminate assistance to her under the Aid to Families with Dependent Children program (AFDC) (42 U.S.C. § 601, et seq. [1976 & 1981 Supp.]; G. L. c. 118) because of the absence of the children from the plaintiff's home. The plaintiff appealed the decision and was granted a hearing, at which she was present and represented by counsel, before a referee of DPW. See 106 Code Mass. Regs. 343.230, 343.240 (1979).[1] The referee denied the plaintiff's appeal, and she filed a complaint for judicial review in the Superior Court pursuant to G. L. c. 30A, § 14. See 106 Code Mass. Regs. 343.720 (1979). On the plaintiff's motion for summary judgment the judge entered summary judgment for DPW (Mass.R.Civ.P. 56[c], 365 Mass. 824 [1974]), and the plaintiff appealed.

The question presented is whether DPW erred in concluding that, under Massachusetts regulations, DPW may terminate AFDC benefits to a mother whose children have, by court order under G. L. c. 119, § 24, been temporarily removed from her care and custody and placed in the legal and physical custody of DSS pending an adjudication of a care and protection petition pursuant to G. L. c. 119, § 26.

1. *The standards for eligibility.* "The AFDC program is based upon a 'scheme of cooperative federalism' in which the Federal government finances a program administered by the States for the benefit of needy, dependent children. *King* v. *Smith,* 392 U.S. 309 (1968). In order to participate in this program, the State plan implementing it must provide that benefits are 'furnished with reasonable promptness to all eligible individuals.' 42 U.S.C. § 602(a)(10) (1976). *King* v. *Smith, supra* at 317. *Townsend* v. *Swank,* 404 U.S. 282, 285 (1971). The grant of benefits 'must be measured by federal standards.' *Carleson* v. *Remillard,* 406 U.S. 598, 600 (1972)." *McCarthy* v. *Commissioner of Pub.*

---

[1] There is no question that the plaintiff was afforded procedural due process. See *Goldberg* v. *Kelly,* 397 U.S. 254 (1970).

*Welfare,* 8 Mass. App. Ct. 600, 604 (1979). The only question as to the plaintiff's eligibility for AFDC benefits involves a determination whether, after the transfer of custody of the District Court from the plaintiff to DSS by a temporary emergency order under G. L. c. 119, § 24, the children are to be considered "living with" the plaintiff as required by Federal and Massachusetts statutes, 42 U.S.C. § 606(a)(1) (1976 & 1981 Supp.); G. L. c. 118, § 1 (as amended through St. 1981, c. 351, § 171), but temporarily absent within the meaning of the Federal and Massachusetts regulations. The Federal regulation in this respect provides in pertinent part: "Within this interpretation [temporary absence from the plaintiff's home], the child is to be considered 'living with' [the plaintiff] even though: (1) He is *under the jurisdiction of the court* (e.g. receiving probation services or *protective supervision*); or (2) Legal custody is held by an agency that does not have physical possession of the child" (emphasis added). 45 C.F.R. § 233.90 (c)(1)(v) (B) (1981). The cognate Massachusetts regulation contains verbatim this qualification of the "living with" requirement. 106 Code Mass. Regs. 303.230(A), second par. (1980). That regulation further provides, however: "The child is not considered to be living with a relative if the child has been voluntarily surrendered or *court committed* into the care and custody of a public or licensed private agency that has physical possession of the child, unless the child returns to the home of the relative for a period of more than 30 consecutive days" (emphasis added). *Id.* third par.

The DPW referee concluded that the District Court transfer of custody constituted a court ordered commitment of the children into the care and custody of DSS, and that under the last quoted provision of the Massachusetts regulation the children were not "living with" the plaintiff and she was thereafter not entitled to AFDC benefits.

2. *The custody transfer.* DSS was given custody of the plaintiff's children under the provision of G. L. c. 119, § 24,

as amended by St. 1980, c. 181.[2]  Under that statute the Juvenile Court[3] is empowered to enter a temporary emergency order transferring custody of a child to DSS if the court is satisfied that "there is reasonable cause to believe that . . . immediate removal of the child is necessary to *protect the child from serious abuse or neglect*" (emphasis added). Such an order is effective for seventy-two hours[4] and may be extended after a hearing at which the parents or custodians are entitled to be represented by counsel.  Although the statute does not expressly so provide, it is implicit that the extension of the temporary emergency order may be made only upon a finding that it is "necessary to protect the child from serious abuse and neglect."  These orders precede any adjudication of the question whether the child is in need of care and protection under G. L. c. 119, § 26, as amended by St. 1978, c. 552, § 29.  Upon an adjudication that the child is in need of care and protection, the court may *commit* the child to the custody of DSS or make other appropriate orders, including a "transfer [of] temporary legal custody" to DSS or a qualified agency or individual.

In this case at the time of the notice to the plaintiff by DPW of its intention to terminate AFDC benefits and the hearing before the DPW referee, a temporary emergency order had been entered under § 24, and extended after a hearing in which the plaintiff had been present and represented by counsel, under which custody of the children was transferred from the plaintiff to DSS.  Thereafter the children were placed in foster care.  There had been no adjudication of the care and protection petition under § 26.  We

---

[2] We do not have before us the record of the proceedings in the juvenile session of the District Court on the care and protection petition by DSS. The parties are in agreement, however, that the petition was brought under § 24 and that a temporary emergency order was entered and extended thereunder.

[3] The juvenile sessions of District Courts have the same authority.

[4] In this case the first order was entered on September 3, 1981, a Thursday.  Monday, September 7, 1981, was Labor Day.  The hearing on September 8, 1981, on the extension of the order was timely held.  See *Muldoon* v. *West End Chevrolet, Inc.*, 338 Mass. 91, 94-95 (1958).

assume that in entering and extending the temporary emergency order under § 24 the judge was satisfied that there was reasonable cause to believe that such action was "necessary to protect [the children] from serious abuse or neglect."

3. *The standard of review.* Regulations such as those involved here are tested on review in the same manner as a statute. See *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977); *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 769 (1980). Ordinarily the interpretation an administrative body gives to its own regulation is entitled to deference and may be controlling. See *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.,* 376 Mass. 480, 491 (1978); *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.,* 15 Mass. App. Ct. 553, 560 (1983); *Immigration & Naturalization Serv.* v. *Stanisic,* 395 U.S. 62, 72 (1962). Here, however, the record discloses that DPW did not consistently interpret the applicable regulation (106 Code Mass. Regs. 303.230[A][1980]),[5] and its interpretation in this case is, therefore, entitled to no weight. See *Amherst-Pelham Regional Sch. Comm., supra* at 492; *McCarthy* v. *Commissioner of Pub. Welfare,* 8 Mass. App. Ct. 600, 607-608 (1979). We resort then to traditional rules of construction. The regulation must be interpreted as promulgated, and, where reasonably possible, no portion of its language should be treated as surplusage. When the language used is plain it must be given its ordinary meaning, and the language used constitutes the principal source of insight into regulatory purpose. See *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 352 Mass. 617, 618 (1967);

---

[5] The same referee who decided the case which is the subject of this appeal issued a decision seven months earlier in which he concluded, on facts virtually identical to those in this case, that under the regulation "eligibility [for AFDC benefits] continues when the case is still under the jurisdiction of the Court — i.e. not adjudicated." In her reply brief the plaintiff suggests that subsequent to the decision in the case before us another decision of DPW was rendered declaring eligibility under similar circumstances, but the latter is not part of the record.

*Commonwealth* v. *Gove,* 366 Mass. 351, 354-355 (1974). In the event of contradiction or conflict in the language of the regulation it is our duty to interpret it, "if possible, so 'as to make it an effectual . . . [regulation] in harmony with common sense and sound reason.'" *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Commn.,* 354 Mass. 408, 414 (1968), quoting from *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492 (1932). Here, of course, the regulation must be read in light of the import of the action of the District Court in transferring custody of the children to DSS.

4. *The application of the regulation to this case.* The referee concluded that the transfer of the custody of the plaintiff's children to DSS pursuant to G. L. c. 119, § 24, was, although temporary pending adjudication of the care and protection petition under § 26, a court commitment of the children into the care and custody of a public agency, as a result of which the children were not to be considered "living with" the plaintiff under the third paragraph of 106 Code Mass. Regs. 303.230(A) (1980). The plaintiff argues that the children should have been considered "living with" her (and the plaintiff thus entitled to AFDC benefits) within the meaning of the second paragraph of the regulation, because the extended temporary emergency order transferring custody simply meant that the children were "under the jurisdiction of the court" and receiving "protective supervision" pending adjudication of the care and protection petition. DPW stresses the words "court committed" in the third paragraph of the regulation and argues that the court order constituted such a commitment and that, therefore, the children were not thereafter "living with" the plaintiff.

The issue is resolved by an analysis of the nature of the temporary emergency order when entered and extended and the state of the proceedings at those times, and by reference to the role of DSS, the agency receiving custody. General Laws c. 119, § 24, provides that when a care and protection petition is filed summonses shall issue to the parents "to show cause why the child should not be *committed to*

*the custody of* [*DSS*] or other appropriate order made" (emphasis added). The adjudication of the merits of the petition and the resolution of the ultimate question whether the child should be *committed* to the custody of DSS may be made only after a hearing under § 26 in which the Commonwealth has the burden of proof. See *Custody of a Minor (No. 2)*, 378 Mass. 712, 718-719 (1979). Pending such adjudication the court may, under § 24, on an ex parte application, enter a temporary emergency order *transferring* custody to DSS and, after hearing, extend that order if it finds reasonable cause to believe that "immediate removal of the child is necessary to *protect* the child from serious abuse or neglect"[6] (emphasis added). DSS regulations provide that, when custody is transferred to DSS under § 24, the child is in its "interim custody," which is defined as the period between commencement of the action under § 24 and adjudication. 110 Code Mass. Regs. 5.02(10) (1981). The regulations further provide that during this time "the physical safety of the child and the continuing integrity of the family unit are of paramount concern." 110 Code Mass. Regs. 5.12(1)(a) (1981).[7] The regulations also impose limitations on the custody powers which may be exer-

---

[6] The provisions with respect to temporary emergency orders were inserted in G. L. c. 119, § 24, by St. 1977, c. 799. Prior to that amendment temporary custody orders were apparently governed only by G. L. c. 119, § 25, inserted by St. 1954, c. 646, § 1, which provided (as it does now), inter alia, that a child "may be *committed* to the custody of the department, pending a hearing on said petition" (emphasis added). This provision may have been superseded by the 1977 amendment to § 24 which, significantly, did not use the word "committed" in connection with temporary emergency orders. On the other hand, § 25 may have some vitality in nonemergency situations. In any event, no temporary order was issued under § 25.

[7] This regulation refers to the court entering a temporary emergency order of transfer of custody under G. L. c. 119, § 24, as the "committing court," and to the child who is the subject of the order as being "committed." The use of these words does not control or influence our construction of the words "court committed" in the DPW regulation involved in this case and may well be founded on the use of the word "committed" in G. L. c. 119, § 25, or in a failure to distinguish the actions of a court under §§ 24 and 26.

cised by DSS,[8] encourage frequent visitation between the child and parents in order to strengthen the relationship, direct the preparation of a service plan with input from the parents, and give parents who object to the way in which DSS exercises its custody powers the right to apply to the court for review. 110 Code Mass. Regs. 5.12(1)(a)(b)(c) and (d) (1981).[9]

It seems clear to us that the temporary transfer of custody of the plaintiff's children to DSS by the District Court was for the protection of the children from possible abuse or neglect while they remained under the jurisdiction of the court, and pending adjudication of the care and protection petition.

We conclude that under the DPW regulation, 106 Code Mass. Regs. 303.230(A) (1980), (1) a child is to be considered "under the jurisdiction of the court" and receiving "protective supervision" and, therefore, "living with" an otherwise eligible AFDC recipient when DSS has custody under an original or extended temporary emergency order under G. L. c. 119, § 24; and (2) a child is not to be considered "living with" such a recipient if the child has been committed to the custody of DSS after an adjudication under G. L. c. 119, § 26.[10] We think such a construction is consistent with the Federal regulation (45 C.F.R. § 233.90 [c][1][v][B][1981]), as it must be to pass muster (see *Carleson* v. *Remillard*, 406 U.S. 598, 600 [1972]), gives full meaning to all of the language of the regulation, and is consistent with the public policy of the Commonwealth.[11]

---

[8] General Laws c. 119, § 21, allows the exercise of far reaching powers and also provides for court review of the exercise.

[9] We note that the regulations are entirely consistent with, and obviously designed to implement, the policy of the Commonwealth to strengthen and encourage family life and to insure the protection and care of children. See G. L. c. 119, § 1.

[10] We express no opinion as to the effects on eligibility for AFDC benefits of other permissible dispositions under § 26.

[11] We recognize that there may be valid policy reasons for limiting the time period within which AFDC benefits may be received by a custodian

5.  *Disposition.*  The judgment is reversed, and the case is remanded to the Superior Court with the direction that it be remanded to DPW.  Upon remand, DPW shall determine the amount of retroactive AFDC benefits due to the plaintiff and her current eligibility for such benefits.  DPW shall report its determinations to the Superior Court, which shall retain jurisdiction and, after such further proceedings as may be appropriate, enter a new judgment consistent with this opinion.

*So ordered.*

from whom the custody of a child has been transferred to DSS under a temporary order pursuant to § 24 or for making the receipt of such benefits subject to periodic review.  The regulation before us contains no such limitations.  Compare, e.g., the Minnesota regulation set forth in *Brunner* v. *Minnesota,* 285 N.W.2d 74, 77 (Minn. 1979).  There may also be valid policy reasons for providing for the proration of benefits to a custodian in these circumstances, taking into account fixed expenses, those incurred incident to visitation and to the implementation of a service plan designed to reunite the family, and those not incurred while the children are absent from the home.  The regulation, however, presents an all or nothing proposition, and neither party has argued that proration is appropriate in this case.  Cf. *McCarthy* v. *Commissioner of Pub. Welfare,* 8 Mass. App. Ct. 600, 609 n.10 (1979).