840 P.2d 1245

**Eric KRAMER and Lorna Baird, Appellants,**

v.

**NEW MEXICO HUMAN SERVICES DEPARTMENT, INCOME SUPPORT DIVISION, Appellee.**

**Nos. 12725, 12777.**

Court of Appeals of New Mexico.

Sept. 3, 1992.

Anna L. Juarez and Eileen D. Curran, Southern New Mexico Legal Services, Inc., Las Cruces, for appellants.

Tom Udall, Atty. Gen., Richard A. Griscom, Gen. Counsel, Diane Garrity and Susan K. Rehr, Asst. Gen. Counsel, New Mexico Human Services Dept., Santa Fe, for appellee.

## OPINION

BLACK, Judge.

■ This appeal is a consolidation of two cases in which Eric Kramer and Lorna Baird (Appellants) appeal from fair hearing decisions which affirmed action by the Human Services Department terminating Appellants' Aid to Families with Dependent Children (AFDC) benefits. In each case the Human Services Department's Social Services Division (SSD) had filed a petition alleging neglect and/or abuse and had gained temporary custody of Appellants' minor children under an ex parte court order. NMSA 1978, §§ 32–1–1 to –45 (Repl.Pamp.1989) (Children's Code). The Human Services Department's Income Services Division (ISD) determined that since the children had been removed from Appellants' homes and placed in foster care during the pendency of the Children's Code proceedings, AFDC payments should be terminated as of the first day of the month following their physical removal. We hold that ISD cannot terminate AFDC benefits before a full adjudicatory hearing has been held on the neglect/abuse petitions, because the children's removal from the home under these circumstances constitutes temporary absence; thus we reverse.

## THE BAIRD CASE

SSD obtained custody of Baird's three minor children under an August 15, 1990 ex parte court order and placed them in temporary foster care. Baird contested the removal of the children from her home. After a custody hearing on August 21, 1990, the children's court ordered that the children remain in foster care pending the adjudicatory hearing. On August 28, 1990, ISD took action to terminate Baird's AFDC benefits and recoup an "overpayment" made during the period the children were absent from the home. Before any further hearings in the children's court proceeding, SSD notified the parties that it was dismissing the neglect/abuse case and returned Baird's children to her on September 14, 1990. The children were absent from the home for about one month, August 15 through September 14.

At the ISD "fair hearing" on terminating benefits, Baird testified that in the children's absence she used her benefits to maintain a home for them while they were in foster care. She used her AFDC allowance to pay the phone, electric, cable, and gas bills, as well as to buy school supplies for the children. A witness for Baird generally confirmed this testimony and further

testified that the Human Services Department did not know when the children would be returned, and had asked Baird to help them financially with the children's normal expenses while they were in foster care. The hearing officer found that ISD was incorrect in determining that Baird had received an AFDC overpayment for August because the children were still in the home on the first day of August, but also upheld termination of AFDC benefits and found that Baird had received an AFDC overpayment for September because the children were in the custody of SSD on the first day of September.

### THE KRAMER CASE

Without notice or Kramer's consent, SSD obtained an emergency order of custody of his two minor children on July 15, 1990. The custody hearing was initiated on July 19, 1990, but was continued by the children's court without giving Kramer an opportunity to present evidence. The children's court did not make a finding of probable cause on July 19 to justify continued foster care, *see* SCRA 1986, Rule 10–303, but did leave the children in SSD's custody pending conclusion of the custody hearing. On July 20, 1990, ISD took action to terminate Kramer's AFDC benefits effective July 31, 1990. Kramer later testified at the fair hearing that, while the children were in foster care, he used the benefits received on their behalf to buy additional clothes and food for them in preparation for their return home.

### PROCEDURE AND STANDARD OF REVIEW

If a child is alleged to be abused or neglected and SSD has custody, the children's court must hold a custody hearing within ten days after the neglect/abuse petition is filed. R. 10–303(A). After the custody hearing, the court is required to return the child to his or her home unless the court determines probable cause exists to determine that the child is abused or neglected, and that for his or her protection the child should remain in the custody of SSD pending the adjudicatory hearing.

*See* R. 10–303(A), (C). The adjudicatory hearing must be commenced within ninety days of the date the neglect/abuse petition is served or other specified events. SCRA 1986, Rule 10–308(A).

ISD argues it has the discretion to terminate AFDC payments when a child is placed in foster care pending an adjudicatory hearing. In seeking to terminate the AFDC payments of one previously found eligible, ISD must carry the burden of persuasion. *Tappen v. State, Dep't of Health & Welfare*, 98 Idaho 576, 570 P.2d 28 (1977); *Borkman v. Commissioner of Social Welfare*, 268 A.2d 790 (Vt.1970). The role of this court is to determine whether ISD's decision was "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record as a whole; or (3) otherwise not in accordance with law." NMSA 1978, § 27–3–4(F) (Repl.Pamp.1989).

### STATE REGULATIONS

Congress established the AFDC program in 1935 as part of the Social Security program. Fred C. Doolittle, *State–Imposed Nonfinancial Eligibility Conditions in AFDC: Confusion in Supreme Court Decisions and A Need for Congressional Clarification*, 19 Harv.J. on Legis. 1 (1982). Its purpose was to encourage the care of dependent children in their own homes by enabling the state to furnish financial assistance "to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life." 42 U.S.C. § 601 (1988); *see Haceesa v. Heim*, 84 N.M. 112, 500 P.2d 197 (Ct.App.1972). The Social Security Act expressly delegates some decisions to the states. Doolittle, *supra*, at 8; *see also* Robert P. Burns, *Rawls and the Principles of Welfare Law*, 83 Nw. U.L.Rev. 184, 221–27 (1989). In areas such as financial eligibility for AFDC, the states may establish guidelines so long as they are not inconsistent with federal law. *Medberry v. Hegstrom*, 786 F.2d 1389 (9th Cir.1986); *Everett v. Schramm*, 772 F.2d 1114 (3d Cir.1985).

ISD's regulations begin with the assumption that the child is considered to be living in the home of a relative if the child is customarily present in the home. "The reasonable temporary absence of either the relative or child, or both, from the home does not indicate the termination of this condition." New Mexico Human Services Department, Income Support Division, *Program Manual* § 317.3 (Dec. 1, 1987). ISD, however, relies upon the definition of "temporary absence" contained in Section 317.5 as the legal foundation for its decision to terminate benefits in the two cases at issue:

A child will remain eligible, even though he is not living in the home of a specified relative, for a period of up to two months, following the month in which the child or the specified relative leaves the home if

a. the absence is caused by an emergency and the absent person is expected to return home within the 2 months, and

b. there is no other person living with the child who could act as the specified relative.

*Id.* § 317.5.

As applied to these two cases ISD originally interpreted the phrase "emergency" to encompass only medical emergencies which were not present in either case on appeal. ISD has now conceded that limiting an emergency for absence from the home to a medical emergency is too narrow in scope. ISD nonetheless argues that "[w]hen a child is temporarily removed from a household and [SSD] has physical custody of the child through an emergency removal petition filed in Children's Court, the child is no longer a member of a household and the household is not eligible for AFDC." In order to sustain this contention ISD must show such an interpretation of Section 317.5 is reasonably related to the purpose of the Social Security Act. *See Figueroa v. Sunn*, 884 F.2d 1290 (9th Cir. 1989); *15,844 Welfare Recipients v. King*, 474 F.Supp. 1374 (D.Mass.1979).

FEDERAL REGULATIONS

As indicated, the goal of AFDC is to maintain dependent children in their homes.

*See Haceesa*, 84 N.M. at 113, 500 P.2d at 198. Under 45 C.F.R. Section 233.-90(c)(1)(v)(B) (1991), a home is defined in the following terms:

A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting. Within this interpretation, the child is considered to be "living with" his relative even though:

(*1*) He is under the jurisdiction of the court (e.g., receiving probation services or protective supervision); or

(*2*) Legal custody is held by an agency that does not have physical possession of the child.

Under this regulation, therefore, the family remains eligible for AFDC even though the child is temporarily absent from the customary family setting, "so long as the relative exercises responsibility for the care and control of the child." *Id.* While "temporarily absent" is not defined, it is clear that the home exists and retains eligibility even though the child may be under the protective supervision of a court. On its face, then, the federal regulation discussing the impact of a "temporary absence" is more liberal than ISD's original interpretation of Section 317.5 of its Manual and would appear to classify foster care pending the adjudicatory hearing in a neglect/abuse proceeding as a "temporary absence." Indeed, some states have recognized this by specifically including "temporary foster care" in their regulations allowing AFDC benefits during a temporary absence. *See, e.g., Campfield v. Perales*, 169 A.D.2d 267, 573 N.Y.S.2d 80 (1991) (New York regulation specifying foster care for up to 180 days as a temporary absence).

Looking at both federal and state AFDC regulations, some courts have found the

children to be "temporarily absent," at least until a court has made a determination that parental abuse or neglect requires that the child be placed in foster care. *Cf. Peck v. Department of Health & Rehabilitative Servs.*, 481 So.2d 927 (Fla.Dist.Ct. App.1985) (AFDC benefits continued while child in halfway house, but benefits legally terminated when child placed in camp program under community rather than primary parental control); *Pfoltzer v. County of Fairfax*, 775 F.Supp. 874, 890 (E.D.Va. 1991) (department removal from the home with subsequent but not prior court approval not a "judicial determination" pursuant to 42 U.S.C. § 672(a)(1) (1988)). *But see Ayres v. Babcock*, 867 F.2d 296 (6th Cir.1989) (upholding Michigan regulation which deems children placed in foster care as absent from the home and thus ineligible for AFDC benefits). Other courts have treated the issue of whether foster care is a "temporary absence" as a determination to be reached on the particular facts and circumstances presented. *See, e.g., In re Roberts v. Perales*, 79 N.Y.2d 686, 584 N.Y.S.2d 775, 595 N.E.2d 850 (1992) (affirming termination of AFDC benefits eleven months after removal of children from the home and subsequent to family court finding of abuse and neglect).

We are impressed by the logic applied to virtually identical facts in *Morin v. Commissioner of Public Welfare*, 16 Mass.App. 20, 448 N.E.2d 1287, *cert. denied*, 389 Mass. 1104, 451 N.E.2d 1167 (1983). In that case the department of social services brought a petition alleging that the plaintiff's four minor children were in need of care and protection. After an ex parte hearing on September 3, 1981, a temporary emergency order was entered transferring custody of the children to the department. After a September 8 hearing at which the plaintiff was present and was represented by counsel, the temporary order was extended to December 8. On September 10 the department of public welfare informed the plaintiff of its decision to terminate AFDC benefits based on the children's absence from the home. Relying upon 45 C.F.R. Section 233.90(c)(1)(v)(B) (1981), the Appeals Court of Massachusetts reversed the termination. That court pointed out that while the department has custody under an original or an extended temporary emergency custody order and before a full adjudication on the petition, the child could still be "living with" the AFDC recipient under the definition of temporary absence in the federal regulations. The Massachusetts court concluded:

> We think such a construction is consistent with the Federal regulation (45 C.F.R. § 233.90[c][1][v][B]), as it must be to pass muster (see *Carleson v. Remillard*, 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 [1972]), gives full meaning to all of the language of the regulation, and is consistent with the public policy of the Commonwealth.

448 N.E.2d at 1292.

Prohibiting the termination of AFDC benefits until after a full adjudicatory hearing and final judicial decision that the children must be removed from the home likewise seems consistent with the public policy of New Mexico. In *Haceesa* we reversed a decision by ISD reducing AFDC benefits to families whose children attended boarding school. Speaking for the court, Judge Hendley said:

> The purposes of AFDC are to strengthen family life. Regulation 220.2. One of those purposes would be to promote family solidarity. See Congressional policy stated in 42 U.S.C. § 601 (1935). * * * To keep the family from being financially able to have the child home on weekends and holidays would not be consistent with purposes as set forth above.

84 N.M. at 113, 500 P.2d at 198.

The rationale expressed in *Haceesa* applies to the cases at bar. As Appellants point out, since they fully expected the adjudicatory hearing to result in their children being returned, they had to maintain their homes in anticipation of that event. *Cf.* 20 C.F.R. 404.366(c) (1991) (expectation to live together in same place after the

temporary separation relevant in defining "living with" for purposes of insurance benefits). To deprive them of their AFDC benefits prior to a final judicial finding that the welfare of the children required a transfer of custody would definitely not promote family solidarity. Terminating AFDC benefits before a judicial decision on the validity of SSD's placement of children in foster homes would also appear to be contrary to a general federal policy of maintaining the family unit. The federal Adoption Assistance and Child Welfare Act of 1980, for example, requires child welfare agencies to make "reasonable efforts" to maintain children with their families and mandates juvenile courts to determine whether the efforts of the agency comply with this goal. Alice C. Shotton, *Making Reasonable Efforts in Child Abuse and Neglect Cases: Ten Years Later*, 26 Cal. W.L.Rev. 223, 223 (1990).

■ Nor are we impressed with ISD's argument that federal law prohibits AFDC payments to the parents while the children are in foster care. While as a general proposition it is clear the state should not be required to pay both AFDC benefits to the parents and AFDC–FC (Aid to Families with Dependent Children–Foster Care) benefits for the same children, different rules apply when the state removes the children and places them in foster care before receiving a full judicial determination that such foster care is in the best interests of the child. As the United States Supreme Court noted in considering proper payments under AFDC–FC:

> Although a fundamental purpose of the Foster Care program was to facilitate removal of children from their homes, Congress also took steps to "safeguard" intact family units from unnecessary upheaval. See S.Rep. No. 165, p. 7; 107 Cong.Rec. 6388 (1961) (remarks of Sen. Byrd). To ensure that children would be removed only from homes demonstrably inimical to their welfare, Congress required participating States to obtain "a judicial determination ... that

> continuation in the home was contrary to the welfare of the child." S.Rep. No. 165, p. 7; see 108 Cong.Rec. 12693 (1962) (remarks of Sen. Eugene McCarthy); § 408(a)(1). Protecting the integrity of established family units by mandating judicial approval of a State's decision to remove a child obviously is a goal that embraces all neglected children, regardless of who the ultimate caretaker may be. [Footnote omitted.]

*Miller v. Youakim,* 440 U.S. 125, 139, 99 S.Ct. 957, 966, 59 L.Ed.2d 194 (1979).

Without the requirement of a judicial determination of the need for a foster care placement, the Human Services Department would have the ability to arbitrarily destroy the stability of the family unit by withdrawing its financial sustenance. Such action would appear contrary to, rather than mandated by, congressional policy. *Id.; see also* Shotton, *supra,* at 255.

While sixty days may normally be an adequate benchmark for determining that the child's absence is no longer "temporary," we hold that, under the facts of the cases before us, ISD abused its discretion in terminating AFDC benefits and assessing an overpayment before completion of full adjudicatory hearings in the children's court proceedings.

CONCLUSION

The fair hearing decision upholding termination of AFDC benefits is reversed, and the case is remanded for determination of the amount of retroactive AFDC benefits, if any, due to Appellants.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.