Doerfer, J.
Plaintiff, Leo Robinson (Robinson), brings this action pursuant to G.L.c. 30A, §14, challenging the ruling of the defendant, the Fair Hearing Unit (FHU) of the Department of Social Services (Department), to support a departmental decision to list his name on the Department’s Central Registry as an alleged perpetrator of neglect. For the following reasons, the FHU’s decision is affirmed.
BACKGROUND
The administrative record (R.) sets forth the following facts:
On April 26 and 27, 1993, the Department received child neglect reports pursuant to G.L.c. 119, §51A on behalf of a child resident at Lifeskills Youth Program (Lifeskills) located in Chelsea, Massachusetts. The 51A reports were investigated by the Department pursuant to G.L.c. 119, §51B. On May 6, 1993, the Department supported the 51A reports based on its own investigation and listed Robinson and two other staff members of Lifeskills on the Department’s Central Registry of alleged perpetrators of neglect.
The reports stem from an incident occurring at Lifeskills between April 21, 1993 and April 25, 1993. On April 21, 1993, the cook at Lifeskills informed Robinson, the Program Director, that James Sawyer,[1] a fifteen-year-old resident at Lifeskills, did not feel well. Robinson instructed the cook to prepare a light meal for Sawyer. (Transcript (Tr.) p. 59.) On the following morning, April 22, 1993, Robinson observed Sawyer involved in horseplay with one of the other residents. (Tr. p. 60.) At 5:00 pm, Supervisor Kenneth Edwards (Edwards) informed Robinson that Sawyer felt ill and did not want to attend a therapy session. Id. Robinson instructed Edwards to take Sawyer to his therapy session and then take him to the hospital. (Tr. p. 61.) Edwards failed to take Sawyer to the hospital.
On April 23, 1993, Robinson worked from 7:30 am until 6:45 pm, and was periodically in and out of the facility. (Tr. p. 63-64.) Robinson did not inquire whether Edwards had followed his directive to take Sawyer to the hospital. The logbook at Lifeskills contained a 5:00 pm entry which stated:
[James] is complaining that his stomach is really hurting him at this time should be taking to hospital.
Robinson had reviewed the logbook earlier in the day.
Robinson did not work on April 24 or April 25,1993, but was on call via a beeper. He spoke with Edwards twice on April 24 and was told that things were fine at the program. (Tr. p. 73.) The logbook for April 24,1993, stated however, that James was very ill in his bed and had not eaten that day.
On April 25, Robinson again telephoned the program and was told by a staff person that things at the program were fine. Later that day, Supervisor Lynn Clark informed Robinson that Sawyer had been taken to the hospital at 11:35 am. At the hospital, Sawyer was diagnosed with a ruptured appendix, which could have resulted in Sawyer’s death if there had been any further delay in seeking medical attention. (Tr. p 22-23.) On May 6, 1993, after an investigation by the Department, the Department chose to support the 51A reports and placed Robinson’s name on the Central Registry.[2]
On June 1, 1993, Robinson appealed the Department’s decision to the FHU of the Department. After a hearing, the FHU upheld the Department’s decision to list Robinson on the Central Registry.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n., 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n., 401 Mass. 713, 721 (1988); Quincy City Hospital v. Labor Relations Comm’n., 400 Mass. 745, 748-49 (1987). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n., 372 Mass. 152, 154 (1977). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n., 385 Mass. 651, 657 (1982). As long as there is substantial evidence to support the findings of the board, the court will not substitute its views as to the facts. Cherubimo v. Board of Registration of Chiropractors, 403 Mass. 350, 354 (1988).
General Laws c. 119, §51A requires certain workers, such as doctors and social service workers, to report to the Department whenever they have reasonable cause to believe that a child under the age of eighteen is suffering from serious physical or emotional injury resulting from neglect. The Department responds to such reports by commencing an investigation pursuant to G.L.c. 119, §51B. Under 110 CMR 4.32(1) the Department must decide whether to support or not support the allegations contained in the *291 report when the investigation is complete. If the Department supports the allegations contained within the report, the Department must have reasonable cause to believe that an incident of neglect by a caretaker did occur. Id. Neglect, as defined by 110 CMR 2.00(35), states that “the failure of a caretaker, either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate medical care.” Caretaker is defined in relevant part as “any person entrusted with the responsibility for a child’s health or welfare.” 110 CMR 2.00(7)(e).
Robinson contends that the Department had no reasonable cause to support the investigator’s report and therefore the FHU should not have affirmed the Department’s decision to retain his name on the Central Registry. Robinson claims that the investigation did not determine that Robinson was responsible for the neglect of Sawyer or that he was Sawyer’s caretaker. (Robinson memorandum, p. 4.) Accordingly, Robinson argues that the FHU did not have substantial evidence to affirm the Department’s decision.
I.Was Robinson Sawyer’s caretaker from April 22-April 25 1992?
The evidence presented to the FHU demonstrates that Robinson had given a directive to Edwards on Thursday, April 22, 1992 to take Sawyer to the hospital. Robinson also testified that, as Program Director, he was responsible for ensuring that the youth residents at Lifeskills received proper medical attention. (Tr. p. 54.) Robinson did not, however, work at the facility on April 24 or April 25, 1993, but was on call via a beeper. Robinson had contact by phone and in person with the staff of Lifeskills on both those days. When speaking with members of the staff on his days off, Robinson would inquire as to how things were going over at the program. The staff member he spoke to would respond that things were going fine.
The Code of Massachusetts Regulations, c. 110, §2.00(7)(e) states that the definition of caretaker is “to be construed broadly and inclusively to encompass any person who is, at the time in question, entrusted with a degree of responsibility for the child.” (Emphasis added.) The court agrees with the FHU’s finding that Robinson was entrusted with a degree of responsibility for Sawyer’s health during the days he worked at Lifeskills and that such a conclusion is supported by substantial evidence. This conclusion is evident from Robinson’s position as director and his admission that he was responsible for the youth residents’ medical contacts. Robinson’s directive to Edwards infers that it was his responsibility to decide when youth residents need medical attention.
The Department’s conclusion that Robinson was Sawyer’s caretaker on April 24 and April 25, 1992 is less evident but supported by substantial evidence. The evidence shows that Robinson continued to remain in contact with Lifeskills on April 24 and 25 even though he had those days off. His inquiries to the staff could be interpreted that Robinson, in his role as Director, was still responsible for any problems that might arise even when he is not present at the facility. Robinson’s contact with the facility during his days off, coupled with his position as Director of Programming of Lifeskills and his testimony that he was responsible for the residents’ medical attention leads to reasonable conclusion that Robinson still retained a degree of responsibility for Sawyer’s welfare on his days off.
The definition of caretaker is to be construed broadly under 110 CMR 2.00(7)(e) and the Department’s and FHU’s interpretation of the regulation is reasonable. The interpretation an administrative body gives to its own regulation is entitled to deference. Morin v. Commissioner of Public Welfare, 16 Mass.App.Ct. 20, 24 (1983); see also Amherst-Pelham Regional School Committee v. Department of Education, 376 Mass. 480, 491 (1978) (stating that weight should be given to any reasonable construction of a regulatory statute adopted by the agency charged with its enforcement). Accordingly, the Department had reasonable cause to conclude that Robinson was a caretaker of Sawyer from April 22 through April 25, 1992 and the FHU’s affirmation of this conclusion is supported by substantial evidence.
II.Is there substantial evidence to support FHU’s determination that the Department had reasonable cause to believe that Robinson as caretaker had neglected Sawyer?
Robinson asserts that the Department should not have supported the investigation’s conclusion that he was responsible for neglect because there was no evidence that Sawyer’s neglect resulted from Robinson acting, or failing to act, in a deliberate or negligent manner. The evidence offered at the hearing by the Department demonstrates that Robinson instructed Edwards to take Sawyer to the hospital on Thursday night. Robinson was the person who made the decision Sawyer needed medical attention. The directive by Robinson was not carried out and Robinson did not follow up the directive to determine if Edwards took Sawyer to the hospital. Robinson did not inquire if Edwards was taken to the hospital when he returned to work on Friday, April 23, 1992 or when he spoke with staff members on April 24 and April 25. Robinson stated at the hearing that he was responsible to ensure that the youth residents of the facility receive medical attention. There is substantial evidence to support a finding that Robinson was entrusted with a degree of responsibility for Sawyer and failed to take actions necessary to provide the child with minimally adequate medical care. The FHU’s affirmation of the Department’s decision to support the investigation is supported by substantial evidence.
III.Is the FHU’s ruling affirming the Department’s decision to retain Robinson on *292 the Central Registry supported by substantial evidence?
If the Department supports the allegations of the report, it may place the alleged perpetrator of the neglect on the Central Registry. Under the version of 110 CMR 4.33(1) in effect at the time Robinson was placed on the Central Registry,[3] the Department was permitted to put an alleged perpetrator of neglect on the Central Registry list if:
1) during the report and/or investigation, the individual(s) was/were alleged responsible for the abuse or neglect and there is no information to definitely indicate otherwise; and
2) in the judgment of the investigator, the allegation(s) with regard to the individual(s) should be further considered during the case management, or the allegation(s) cause protective concerns about the individual(s) as a caretaker.
As discussed above, the Department presented substantial evidence to the FHU to demonstrate that it had reasonable cause to believe that Robinson was responsible for the neglect of Sawyer. Although others at the facility, such as Edwards, may also have been responsible for the neglect, Robinson offered no evidence “to definitely indicate” that he was not responsible for the neglect. The Department presented substantial evidence to justify Robinson being on the Central Registry list under 110 CMR 4.33(1)(1).
Additionally, the Department has legitimate protective concerns about Robinson as a caretaker. Failure to provide minimally adequate medical care almost resulted in the death of Sawyer. Accordingly, there is substantial evidence to maintain Robinson on the Central Registry.
ORDER
For the following reasons, it is hereby ORDERED that judgment enter in favor of the defendant affirming the decision of the Fair Hearing Unit.

 A fictitious name is used to protect the child’s identity.

 After Robinson had been placed on the Central Registry, Arnaldo Solis, the Executive Director of Children’s Services of Roxbury, conducted an internal investigation of the Sawyer incident. The investigation concluded that Robinson had been negligent as Sawyer’s caretaker and that his negligence resulted in Sawyer being neglected.
Children's Service of Roxbury acquired Lifeskills on December 17, 1992. (R. 7.) The investigation by Solis was independent of the investigation the Department performed to determine whether to support the 51A reports.

 On May 21, 1993, 110 CMR 4.00 was amended to remove the internal administrative review process and to create a new standard to determine when to list a perpetrator. Under the amended version of 110 CMR 4.33(1), a perpetrator’s name may only be placed on the Central Registry if the neglect has been referred to the District Attorney pursuant to G.L.c. 119, §51B(4) and there is substantial evidence indicating that the alleged perpetrator was responsible for the abuse or neglect. The court notes that the present standard is higher but is bound to apply the old standard absent a clear intent that the new standard is retroactive.