Hinkle, Margaret R., J.
Currently before the Court is a motion for judgment on the pleadings filed under Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1 -96(4) by plaintiff Cohmad Securities Corporation (Cohmad). Pursuant to G.L.c. 30A, §14, Cohmad seeks judicial review of a Consolidated Order, issued May 7, 2009, by defendant Laurie Flynn, Acting Director of the Massachusetts Securities Division (division) of the Secretary of the Commonwealth (Secretary). The Consolidated Order contained a finding that Cohmad was in default based on the subsidiary finding that Cohmad had untimely filed its Answer to the division’s Administrative Complaint. Judgment was entered on the default upon the further finding that this failure, in context, was a willful violation of the division’s regulations.
The Court has stayed enforcement of the Consolidated Order, which the parties agree is a final decision of the Secretary in an adjudicatory proceeding and thus subject to judicial review under the Uniform Securities Act and the State Administrative Procedure Act. The Court suggested and the parties agreed to an expedited briefing schedule.
After a hearing and review of the administrative record and consideration of submissions by the par *614 ties and amicus curiae,[2] the entry of default judgment is vacated, and the matter is remanded for further proceedings consistent with this decision.
BACKGROUND
The Court’s review is confined to the administrative record, see G.L.c. 30A, §14(5), which has been supplemented by the Secretary under G.L.c. 30A, § 14(4). The record includes evidence of the following.
Cohmad was a Massachusetts registered broker-dealer. Marcia Cohn served as Cohmad’s President, Chief Operating Officer, and Chief Compliance Officer and was a “direct owner” of Cohmad. Maurice Cohn served as Cohmad’s Chairman and Chief Executive Officer and was also a “direct owner” of Cohmad. Robert Jaffe served as Cohmad’s Vice President and was a “direct owner” of Cohmad. Jaffe was also a Massachusetts registered agent of Cohmad. Bernard Madoff was a Director of Cohmad and owned between 15 and 20 percent of Cohmad’s shares. Peter Madoff was a Director of Cohmad and owned between five and 10 percent of Cohmad.
Following the December 2008 arrest of Bernard Madoff by federal authorities in New York City, the Secretary commenced an investigation, In the Matter of Bernard L. Madoff Investment Securities, Docket No. 2008-0087.
In connection with that investigation, on December 15 and 22, 2008, the division served Cohmad with subpoenas pursuant to G.L.c. 110A, §407(b). Those subpoenas sought, by January 5, 2009,[3] answers to interrogatories and production of documents pertaining to Cohmad’s Massachusetts investors and Cohmad’s relationship with Bernard L. Madoff Investment Securities and any related entities (Madoff Investment Securities) since January 1, 2000. Attached to each subpoena was a form, to be returned with the response to the subpoena, which sought verification that the response was, among other things, “complete and correct to the best of [the verifying official’s] knowledge and belief.”
As Cohmad was a New York corporation with a principal place of business in New York, the two December subpoenas were served upon Marcia Cohn at an address for Cohmad in New York City.
On or around January 2, 2009, Cohmad produced documents to the division in response to the two subpoenas. In a cover letter, Cohmad’s counsel wrote that additional responsive documents would be produced “shortly.” On January 6, 2009, Cohmad further responded to the subpoenas over the general objections that the subpoenas were “overly broad, unduly burdensome, vague and ambiguous.”
In counsel’s January 6 cover letter, Cohmad answered the December 15 and December 22 interrogatories. Cohmad indicated that it “ha[d] not located documents responsive to Document Request No. 2 of the subpoena dated December 22, 2008,” but that it was producing “samples of certain types of documents” which counsel “believe[d] contain[ed] information responsive to [the division’s] requests.” Counsel stated that Cohmad might be able to provide “additional samples” if the division believed that the types of documents provided were, in fact, responsive to its requests. Counsel wrote that Cohmad’s responses to the two December subpoenas were “to the best of its knowledge complete as of the date of the[ ] responses.”
The Verification attached to the December 15 subpoena had been returned with the notarized signature of Marcia Cohn in her capacity as Cohmad’s President; the Verification attached to the December 22 subpoena had been returned with the notarized name and title, but not signature, of Marcia Cohn. Responding to the division’s challenge to the veracity of those verifications, Cohmad’s counsel also wrote on January 6 that Marcia Cohn’s “Verifications . . . were and continue to be accurate when read in conjunction with [counsel’s] January 2, 2009 cover letter which informed the [division] that Cohmad would be producing additional responsive documents shortly.”
On or around January 9, 2009, Cohmad supplemented its prior responses with additional information pertaining to one investor and with a document recently received from a third party.
On January 16, 2009, counsel for the division replied that Cohmad’s response to the subpoenas was “deficient” because only samples of certain types of documents were produced and because certain “portions of the production ... on their face, appear[ed] incomplete.” The division’s counsel stated that Cohmad was “in contumacy” and in violation of G.L.c. 110A and insisted that Cohmad cure the deficiencies.
On January 16, 2009, the division sent Cohmad a subpoena pursuant to G.L.c. 110A, §407(b), consisting of nine interrogatories and 15 requests for documents. Cohmad responded on January 30. In the cover letter with that response, Cohmad’s counsel reiterated Cohmad’s general objections and asserted legal and other objections to specific interrogatories and document requests. Counsel stated that Cohmad’s prior responses were not deficient, but “[njevertheless” Cohmad produced additional documentation in response to the December 15 and 22, 2008, subpoenas.
In all, Cohmad produced 19,959 pages of documents in response to the division’s subpoenas.
Cohmad did not return the Verification attached to the January 16 subpoena; Cohmad questioned the division’s authority to require a corporation to provide such verifications and disputed the division’s “apparent ] . . . position that a corporate officer or employee consents to the Secretary’s jurisdiction over him or her personally by executing a verification form in his or her corporate capacity . . .” Cohmad also specifically “preserv[ed]’’ its right to assert “jurisdictional and *615 other objections with respect to out-of-state individuals employed by Cohmad.”
On or around January 27, 2009, the division served upon Cohmad’s counsel a subpoena to Cohmad pursuant to G.L.c. 110A, §407(b), requiring testimony before the division on February 10, 2009, of the person or persons designated by Cohmad as “most knowledgeable” about payments since January 1, 2000, from Madoff Investment Securities to Cohmad and to certain people affiliated with Cohmad and about “the purpose of [those] payments.” On February 6, counsel for Cohmad replied by letter that Cohmad was asserting legal objections to the January 27 subpoena and that Cohmad “d[id] not intend to produce a witness or witnesses” to testify before the division in response to the subpoena.
On December 17, 2008, the division subpoenaed Robert Jaffe pursuant to G.L.c. 110A, §407(b), to appear before the division on January 6, 2009.[4] Principally for reasons ostensibly relating to Jaffe’s health, his appearance was postponed until January 21. A January 19 request for further postponement, based on legal and other objections unrelated to Jaffe’s health, was denied by the division. When Jaffe did not appear on January 21, the division initiated an enforcement action in this Court that resulted in a January 26 Order (Neel, J.) requiring Jaffe to comply with the terms of the subpoena by February 6, 2009.
On February 4, 2009, Jaffe appeared before the division. When questioned about his business, Cohmad’s business or Bernard Madoffs business, Jaffe invoked his rights under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.
On January 6, 2009, the division subpoenaed Marcia Cohn pursuant to G.L.c. 110A, §407(b), to testify before the division on January 20. After a subsequent exchange of correspondence between counsel over conditions for postponing Marcia Cohn’s testimony, on January 28, the division was informed that Marcia Cohn intended to raise “jurisdictional” and “substantive” challenges to any enforcement of the January 6 subpoena. Counsel for the division replied the following day that Marcia Cohn “remain[ed] in contumacy for failing to appear on January 20th” and requested an explanation both of the “rationale for taking the position that the Secretary lackfed] jurisdiction over Ms. Cohn” and of the substantive grounds for challenging enforcement of the subpoena. Marcia Cohn never testified before the division.
On January 16, 2009, the division subpoenaed Maurice Cohn pursuant to G.L.c. 110A, §407(b), to testify before the division on January 30. On January 28, the division was informed that Maurice Cohn would raise “jurisdictional” and “substantive” challenges to any enforcement of this subpoena. Counsel for the division replied the following day that Maurice Cohn would be “in contumacy” if he did not appear for his scheduled testimony and requested a detailed delineation of Maurice Cohn’s “jurisdictional” and “substantive” challenges. Maurice Cohn did not testify before the division.
On February 11, 2009, the Enforcement Section of the division (Enforcement Section) filed a four-count Administrative Complaint against Cohmad: Count I alleged that Cohmad had violated G.L.c. 110A, §§203 and 204(a)(2)(B); Count II alleged that Cohmad had violated G.L.c. 110A, §204(a)(2)(G); Count III alleged that Cohmad had violated G.L.c. 110A, §204(a)(2)(J), and “Count V” [sic] alleged that Cohmad had violated G.L.c. 110A, §404. The proceeding was captioned In the Matter of: Cohmad Securities Corporation, Docket No. 2009-0015. The Administrative Complaint was served upon Cohmad on February 11.
In the Administrative Complaint, the Enforcement Section moved for an ex parte order suspending Cohmad’s registration in Massachusetts as a broker-dealer pursuant to G.L.c. 110A, §204(c). Finding that the Administrative Complaint established a prima facie case that Cohmad had violated the Uniform Securities Act, the Secretary allowed the motion on the same day and summarily suspended Cohmad’s registration. Consonant with the Secretary’s order, Cohmad timely notified its Massachusetts clients of the registration suspension.
On March 4, 2009, Cohmad moved, pursuant to 950 Code Mass. Regs. §10.07(b), for a more definite statement on the ground that the allegations in the Administrative Complaint were “so vague and ambiguous that Cohmad [could not] frame a reasonable, informed response.”
Also on March 4, pursuant to 950 Code Mass. Regs. §§10.02(b)(3) and 14.406(a)(1), the Secretary appointed Laurie Flynn (hereinafter the Presiding Officer), Director of the Secretary’s Corporations Division and General Counsel for the Office of the Secretary, to serve both as Director of the Securities Division and as Presiding Officer in the adjudicatory proceeding against Cohmad.
On March 5, 2009, the Enforcement Section filed its opposition to Cohmad’s motion for a more definite statement and also, pursuant to 950 Code Mass. Regs. § 10.06(e), moved for a default judgment on the ground that Cohmad had not filed an answer to the Administrative Complaint by the March 4 deadline.
On March 6, 2009, the Presiding Officer entered an order denying Cohmad’s motion for a more definite statement and giving Cohmad 14 days to respond to the Enforcement Division’s motion for entry of default judgment. The same day, Cohmad filed its opposition to the motion for entry of default.
On March 11,2009, Cohmad filed its Answer to the division’s Administrative Complaint. The signature block of the Answer contained two parts: under “AS TO FACTUAL ASSERTIONS” was typed “COHMAD SECURITIES CORPORATION”; under “AS TO LEGAL MATTERS: By its attorneys” the signature of Cohmad’s attorney appeared. On March 13, the Enforcement Section moved pursuant to 950 Code Mass. *616 Regs. §10.07(c) to strike Cohmad’s Answer on the grounds that it was untimely filed and improperly signed. On March 20, Cohmad supplemented its opposition to the motion for entry of a default judgment. At the March 24 hearing on the Enforcement Section’s motion for a default judgment, Cohmad offered on three occasions to act in accordance with the Presiding Officer’s interpretation of the regulation regarding signatures on answers filed with the division.[5]
On March 23, 2009, Cohmad moved to disqualify the Presiding Officer or, alternatively, to request discovery. In support of its motion, Cohmad argued that the Presiding Officer could not be impartial because she was general counsel to the Secretary, who had made several allegedly negative public comments about Cohmad. Cohmad also argued that the Presiding Officer’s statement in a prior order suggested her bias against Cohmad. Alternatively, Cohmad argued that it was entitled to discover the extent of the Presiding Officer’s participation in the investigations of Bernard Madoff and Cohmad.
On April 6, 2009, the Enforcement Section filed its opposition to Cohmad’s motion to disqualify. On April 16, the Presiding Officer issued an order denying Cohmad’s motion.
On May 7, 2009, the Presiding Officer issued a two-part Consolidated Order. In Part I, the Presiding Officer found that Cohmad’s Answer was not timely filed and that the signature on Cohmad’s Answer was legally insufficient. In Part II, the Presiding Officer found that Cohmad’s Answer represented a “continuation of a course of conduct in which [Cohmad] willfully engaged in violation of 950 [Code Mass. Regs. §§] 10.05(b) and 10.06(e), (i) and [Cohmad’s] responsibilities as a registered broker-dealer in the Commonwealth.”[6] In exercises of discretion pursuant to the division’s regulations, the Presiding Officer entered judgment on Cohmad’s default and deemed admitted the uncontroverted allegations contained in the Administrative Complaint. The Presiding Officer accordingly concluded that Cohmad had committed the statutory violations alleged and ordered sanctions.[7]
DISCUSSION
On May 29, 2009, Cohmad filed a complaint in Superior Court for judicial review of the Consolidated Order pursuant to G.L.c. 30A, §14(7), and for declaratory judgments under G.L.c. 231A, §§1 and 2. Defendant Secretary Galvin and Defendant Acting Director Flynn concur that the Consolidated Order was a final decision of the Secretary in an adjudicatory proceeding and thus subject to judicial review under G.L.c. 30A, §14(7). See G.L.c. 110A, §411; Silvia v. Securities Div., 61 Mass.App.Ct. 350, 358 (2004).
“[U]nder the well-established standards mandated by G.L.c. 30A, §14(7): the reviewing court may set aside or modify the decision because, among other reasons, it exceeds the authority of the agency, is based on an error of law, or is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” New Bedford v. Massachusetts Comm’n Against Discrimination, 440 Mass. 450, 459 (2003). The reviewing court must “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7); Attorney Gen. v. Commissioner of Ins., 450 Mass. 311, 318 (2008). ‘To the extent that an agency finding is one of fact, it must stand unless unsupported by substantial evidence” (quotation omitted); Raytheon Co. v. Director of the Div. of Employment Sec., 364 Mass. 593, 595 (1974); Allen of Michigan, Inc. v. Deputy Director of the Div. of Employment & Training, 64 Mass.App.Ct. 370, 377 (2005); but “to the extent that an agency determination involves a question of law, it is subject to de novo judicial review,” Raytheon Co., 364 Mass. at 595; accord Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375 (2000).
As the appellant, Cohmad bears the burden of demonstrating the invalidity of the Secretary’s decision. See Massachusetts Ass’n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263 (2001), citing cases.
The Court addresses in turn Cohmad’s challenges to the two constituent parts of the Consolidated Order: (i) the finding that Cohmad was in default and (ii) the Presiding Officer’s exercise of discretion to enter judgment on that default.
In Part I of the Consolidated Order, the Presiding Officer found that Cohmad was in default for failure to file an answer within 21 days of being served with the division’s Administrative Complaint as required by 950 Code Mass. Regs. §10.06(e). Cohmad has not met its burden of proving that the Presiding Officer’s finding was legal error.
On February 11,2009, the division served the Administrative Complaint upon Cohmad. By regulation, Cohmad was required to file an answer within 21 days, see 950 Code Mass. Regs. §10.06(e),[8] which worked out to a deadline of March 4, 2009, see 950 Code Mass. Regs. §10.04(c).[9] The regulation governing timeliness of answers admits of neither exception nor discretion; thus, Cohmad’s failure to file an answer by March 4 was to “be considered a default,” 950 Code Mass. Regs. §10.06(e), and the Presiding Officer so found.
Cohmad’s argument that it was not required to file its Answer within the 21-day period is unavailing. Cohmad argues that its timely filed motion for a more definite statement, which the division’s regulations indicated was to be filed before Cohmad filed its answer, see 950 Code Mass. Regs. §10.07(b),[10] should have “stopped the clock,” as with the similar motion under Mass.R.Civ.P. 12, see Reporters’ Notes to Mass.RCiv.P. 12, 43A Mass. Gen. Laws Ann., Rules of Civil Procedure, at 139 (West 2002). While Cohmad’s argument has some practical appeal, it fails to persuade the Court to overrule the interpretation of the division’s regulation advanced by the Presiding Officer.
The defendants, in essence, maintain that the division has not interpreted its procedural rules with a gloss *617 similar to that given rule 12. The defendants correctly observe that the division’s rule pertaining to the timely filing of answers is stated in mandatory terms, see 950 Code Mass. Regs. §10.06(e), and that extensions of time limits may be had under 950 Code Mass. Regs. § 10.04(d) (“It shall be within the discretion of the Division or Presiding Officer, for good cause shown, to extend any time limit contained in these rules”).[11] Although the division’s interpretation might in practice seem strained, it is nonetheless accorded “considerable deference” where, as here, it has not been shown to be “arbitrary, unreasonable, or inconsistent with the plain terms of the regulation itself.” See Warcewicz a Department of Envtl. Protection, 410 Mass. 548, 550 (1991).
In Part II of the Consolidated Order, the Presiding Officer explained that she exercised her discretion under 950 Code Mass. Regs. §10.06(e) to enter judgment on Cohmad’s default because, at bottom, she found that the untimely filed Answer, viewed in the context of Cohmad’s prior conduct, was a willful violation of the division’s regulations. On this finding, Cohmad has met its burden of proving that the Presiding Officer abused her discretion by entering that default judgment.[12]
“Involuntary dismissal is a drastic sanction which should be utilized only in extreme situations . . . The law strongly favors a trial on the merits of a claim.” Monahan v. Washburn, 400 Mass. 126, 128-29 (1987). “The judicial preference for adjudication on the merits goes to the fundamental fairness of the adjudicatory process” and applies with equal force to judicial review of a default judgment entered in an agency adjudication. See, e.g., Oberstar v. F.D.I.C., 987 F.2d 494, 503-04 (8th Cir. 1993). Although a reviewing court cannot “interfere with the imposition of a penalty by an administrative tribunal because in the court’s own evaluation of the circumstances the penalty appears to be too harsh” (quotation omitted), University Hosp., Inc. v. Massachusetts Comm’n Against Discrimination, 396 Mass. 533, 538 (1986), a court may invalidate an administrative sanction that is arbitrary, capricious, or unwarranted in law, cf. id. at 536-37.
Here, the defendants properly acknowledge that the offense which put Cohmad in default was technical and relatively minor — Cohmad filed its Answer seven days late. Longer delays have been characterized as “marginal failure[s],” United States v. Harre, 983 F.2d 128, 129-30 (8th Cir. 1993) (12 days), and “minor deviation[s],” Oberstar, 987 F.2d at 503-04 (22 days). Where a default judgment is upheld, the conduct at issue typically occurs over considerable time. See, e.g., Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass.App.Ct. 426 (1986) (20 months). For example, in the case quoted by the Presiding Officer in the Consolidated Order, Cicchese v. Tape Time Corp., the defendant waited nine months to file an answer and then nearly six months to respond to the entry of default, 28 Mass.App.Ct. 72, 74-75 (1989). In this Court’s view, more than the relatively slight delay at issue here is required, as the Presiding Officer implicitly recognized, and the defendants all but concede.
The parties thus center the dispute about the propriety of the Presiding Officer’s exercise of discretion on the record evidence she cited as relevant to demonstrating Cohmad’s willfulness. In that dispute, Cohmad has the better argument: a fair review of the entire record does not reveal evidence that Cohmad willfully defied its lawful obligations.
As an initial observation, Cohmad’s response to the division’s subpoenas was not insignificant. Cohmad produced nearly 20,000 pages of documents and substantively answered or legally objected to the division’s interrogatories. More to the point, the facts which the Presiding Officer stated were relevant to her finding that Cohmad willfully violated the division’s regulation more accurately support a finding that Cohmad had interposed cognizable objections to the division’s authority. Cohmad repeatedly raised challenges to the division’s jurisdiction, objecting to actions purportedly taken by the division to obtain personal jurisdiction over non-residents. From all that appears in the record, Cohmad also made good faith challenges to the division’s authority to enforce subpoenas without assistance from this Court under G.L.c. 110A, §407(c). In addition, Cohmad acted not unreasonably in its effort to comply with the division’s regulation prescribing the manner in which answers are signed, 950 Code Mass. Regs. §10.05(b).[13] Cohmad’s Answer was “signed by the Party,” id., and, at the March 24 hearing, Cohmad attempted to ascertain the alternative signature method preferred by the division. In sum, there was insufficient evidence to support the Presiding Officer’s finding of Cohmad’s willfulness.
For the foregoing reasons, the Court therefore concludes that Cohmad has shown that the Presiding Officer abused her discretion under 950 Code Mass. Regs. § 10.06(e) to enter judgment on Cohmad’s default. The entry of default judgment is therefore vacated and the matter is remanded for further proceedings consistent with this decision.[14], [15]
ORDER
It is therefore ORDERED that Cohmad Securities Corporation’s Motion for Judgment on the Pleadings is ALLOWED.
The entry of default judgment against Cohmad Securities Corporation in the proceeding before the Securities Division of the Office of the Secretary of the Commonwealth, In the Matter of: Cohmad Securities Corporation, Docket No. 2009-0015, is VACATED, and the matter is REMANDED for further proceedings consistent with this decision.

The Enforcement Section of the division was granted leave to proceed as amicus curiae.

The December 15, 2008, subpoena had a return date of December 29, 2008; upon Cohmad’s request, the division extended the deadline to January 5, 2009.

The record support for the facts pertaining to the subpoena served upon Robert Jaffe is derived from factual allegations in the division’s Administrative Complaint that the Presiding Officer deemed admitted by virtue of Cohmad’s default.
By Stipulation, the parties have agreed that documentary support for these alleged facts was not part of the record before the Presiding Officer during the adjudicatory proceeding and has not been made part of the administrative record before the Court.

For instance, Cohmad’s counsel stated to the Presiding Officer, “If you believe that our answer was deficient, even though we believe it was compliant with the rules, we will take steps to provide an answer that is consistent with the [P]residing [Olfficer’s interpretation of the rules, notwithstanding our view of what the rules provide ...”

Ihe facts relevant to the Presiding Officer’s determination that the failures found in Part I of the Consolidated Order represented a continuing course of conduct included: (1) the December 22, 2008, Verification was not signed; (2) Cohmad “refused to have any natural person sign any factual attestations since [Marcia Cohn’s verification with respect to the December 15, 2008, subpoena]”; (3) Jaffe failed to comply with the division’s subpoena until the Superior Court ordered him to do so; (4) Jaffe declined to answer the division’s questions on February 4,2009, and invoked his constitutional rights against self-incrimination; (5) Marcia Cohn contested the division’s jurisdiction over her and refused to appear before the division; (6) Maurice Cohn contested the division's jurisdiction over him- and refused to appear before the division; and (7) Cohmad refused to comply with the division’s subpoena that directed Cohmad to provide the person most knowledgeable about its relationship with Bernard Madoff.

The Presiding Officer ordered: (1) that Cohmad cease and desist from committing further violations of the Uniform Securities Act; (2) that Cohmad be required to provide an accounting of all Massachusetts investors whom Cohmad or its registered representatives or other agents referred to Bemdard Madoff or Madoff Investment Securities and all fees in connection therewith; (3) that Cohmad’s registration as a Massachusetts broker-dealer be revoked; and (4) that Cohmad pay an administrative fine of $100,000.

In relevant part, the division’s regulations with respect to initiating formal adjudicatory proceedings provide:
Answer. Within 21 days of service of the Notice of Adjudicatory Hearing and Administrative Complaint, the Respondent shall file an answer to it. Failure to answer timely will be considered a default and may result in the entry of a default judgment or such other action as the Presiding Officer may deem appropriate.
950 Code Mass. Regs. §10.06(e).

In relevant part, the division’s regulations with respect to time provide:
Computation of Time. Unless otherwise specifically provided by law or these rules, computation of any time period referred to in these rules shall begin with the first day following the act which initiates the running of the time period. The last day of the time period so computed is to be included unless it is a Saturday, Sunday, or legal holiday or any other day on which the Division is closed, in which event the period shall run until the end of the next following business day . . .
950 Code Mass. Regs. §10.04(c).

In relevant part, the division’s regulations regarding motions provide:
Motion for More Definite Statement. If a pleading to which a responsive pleading is required is so vague or ambiguous that a Party cannot reasonably frame a responsive pleading, the responding Party may within the time permitted for such responsive pleading, move for a more definite statement before filing its responsive pleading. The motion shall set forth the defects complained of and the details desired. If the motion is granted, the more definite statement shall be filed within ten days of the notice of the order being sent or within such other time as may be ordered.
950 Code Mass. Regs. §10.07(b).

It bears noting here that Cohmad has not explained why it could not have filed its motion earlier than the day on which its answer was due and received a ruling in sufficient time to permit filing an answerwithin 21 days (or, itmayreasonablybe assumed, received an extension for good cause while its motion was under advisement). As it was, the Presiding Officer ruled on Cohmad’s motion within two days of its filing, and Cohmad filed its Answer five days after receiving that ruling. In so noting, the Court is mindful of Cohmad’s argument that the Presiding Officer was not appointed until March 4, 2009, the day Cohmad filed its motion. Presumably, however, it was unnecessary to appoint a Presiding Officer until there was something to adjudicate.

In Part II of the order, the Presiding Officer also exercised her discretion to deem admitted the uncontroverted allegations contained in the Administrative Complaint. That ruling is not before the Court.

In relevant part, the division’s regulations with respect to filings generally provides:
Signatures. Papers filed with the Division shall be signed and dated by the Party on whose behalf the filing is made or by the Party’s Authorized Representative and shall state the address and telephone number of such Party or Authorized Representative; except all answers, answers to interrogatories and all responses containing factual representations must be signed by the Party. Signature by a Party constitutes a certification by the signer that he has read the document, knows the content thereof, and that such statements are true, and that it is not interposed for delay. If the document has been signed by an Authorized Representative, where permitted, such signature constitutes a certification that he has full power and authority to sign; that he has read the document; that, after reasonable enquiry, he believes that there is a good ground to support it; and, that it is not interposed for delay.
950 Code Mass. Regs. §10.05(b).

Given this resolution, the Court does not reach Cohmad’s challenge based on the Presiding Officer’s refusal to disqualify herself. However, in light of the correspondence revealed in the supplemental administrative record, the Secretary may wish to reassign the matter, if only with an eye toward placing beyond reproach the integrity of proceedings in which there appears considerable public interest.

It is only necessary in this decision to determine that Cohmad’s objections to the division’s subpoenas were not meritless. The Court declines Cohmad’s request that a declaratory judgment issue resolving the question whether the division may challenge objections to subpoenas issued pursuant to G.L.c. 110A, §407(b) in administrative proceedings or must resort to enforcement proceedings commenced in Superior Court pursuant to §407(c). It is appropriate to allow the division to address the question squarely in the administrative proceeding. See Murphy v. Administrator of Div. of Personnel Admin., 377 Mass. 217, 220-21 (1979); see generally A. J. Celia, Administrative Law and Practice c. 24 (1986). As a general matter, declaratory judgment actions are not intended to substitute for administrative proceedings. East Chop Tennis Club v. Massachusetts Comm’n Against Discrimination, 364 Mass. 444, 451-52 (1973).