218　　　　　　　71 Mass. App. Ct. 218 (2008)

Shaw *v.* Secretary of the Executive Office of Health & Human Services.

ASHLEY SHAW[1] *vs.* SECRETARY OF THE EXECUTIVE OFFICE OF
HEALTH & HUMAN SERVICES & another.[2]

No. 06-P-1599.

Suffolk. October 9, 2007. - February 19, 2008.

Present: CYPHER, DREBEN, & COHEN, JJ.

*Division of Medical Assistance. Administrative Law,* Agency's interpretation of
regulation. *Regulation. Words,* "Medical necessity," "Covered procedure."

In an action for judicial review of a decision by MassHealth (an entity that
administers certain medical benefits in conjunction with the Division of
Medical Assistance [DMA]) denying the plaintiff's request for authoriza-
tion of a surgical procedure because the procedure — which MassHealth
initially stated was not covered — had been performed without authoriza-
tion while the plaintiff's appeal from that decision was pending, in light of
her physician's view that the procedure was medically necessary, the
Superior Court judge erred in granting judgment on the pleadings in favor
of the defendants, where the DMA hearing officer made no findings on the
medical necessity of the request; where there was no timely and reasonable
alternative available to the plaintiff when her request for authorization was
denied; and where MassHealth's treatment of prior authorization as over-
riding all other considerations was inconsistent with the governing
regulation's purpose; consequently, this court remanded the matter to
MassHealth for a review of the medical necessity of the procedure accord-
ing to defined criteria with an adequate record of the proceedings. [221-222]

CIVIL ACTION commenced in the Superior Court Department on
September 22, 2005.

The case was heard by *D. Lloyd Macdonald*, J., on a motion
for judgment on the pleadings.

[1] By her mother and next friend, Elizabeth Shaw.

[2] Director of the Office of Medicaid. Although the Division of Medical As-
sistance (DMA) was renamed the Office of Medicaid in 2003, see *Mas-
sachusetts Gen. Hosp.* v. *Commissioner of the Div. of Med. Assistance,* 66
Mass. App. Ct. 485, 485 n.1 (2006), the sections of G. L. c. 118E quoted in
this decision continued to refer to the DMA during the times relevant in this
case.

*Bennett H. Klein* for the plaintiff.

*Iraida J. Alvarez*, Assistant Attorney General (*Carolann Mitchell* with her) for the defendants.

CYPHER, J. In May, 2004, MassHealth[3] denied a request for authorization of a surgical procedure for the plaintiff, Ashley Shaw (Ashley), stating that the requested procedure was not covered. The procedure was, however, deemed medically necessary by her physician. Ashley, through her mother, Elizabeth Shaw (Shaw), pursued an administrative appeal of MassHealth's decision, but while the appeal was pending, Shaw, believing the procedure to be medically necessary, assumed financial responsibility for the procedure in the event Ashley lost her appeal. Accordingly, Shaw instructed Ashley's physician to proceed with the surgery. MassHealth then denied Ashley's appeal on the ground that the procedure had been performed without authorization.[4] Ashley sought judicial review in the Superior Court under G. L. c. 30A, § 14. The judge denied her motion for judgment on the pleadings and entered judgment for the defendants. This appeal followed. We vacate the judgment of the Superior Court.

*Background.* As a side effect of medications used in treating Ashley's life-long HIV-AIDS, she developed an abnormal fat

---

[3] MassHealth administers medical benefits provided under a demonstration project within the DMA. See G. L. c. 118E, § 9A(1); 130 Code Mass. Regs. §§ 501 et seq. (2004). See also G. L. c. 118E, § 1.

[4] The proposed procedure was among those requiring prior authorization and a determination of medical necessity by MassHealth. Prior authorization and determination of medical necessity are subjects of regulations promulgated by DMA specifically for various "codes" listed in a "Physician Manual," referred to in 130 Code Mass. Regs. § 433.408(A)(1) (2006), which provides as follows:

> "(A) (1) Subchapter 6 of the *Physician Manual* lists codes that require prior authorization as a prerequisite for payment. The MassHealth agency does not pay for services if billed under any of these codes, unless the provider has obtained prior authorization from the MassHealth agency before providing the service."

Section (A) (2) provides:

> "(2) A prior authorization determines only the medical necessity of the authorized services and does not establish or waive any other prerequisites for payment, such as member eligibility or resort to health insurance payment."

pad on her neck and shoulder area, known medically as lipodistrophy, or more commonly as a "buffalo hump." By February, 2004, it was of significant size for a child who then was about fifteen years old, five feet, two inches tall, and weighing 115 pounds. It measured fifteen by fifteen by five centimeters. In addition to being disfiguring, it caused Ashley to have abnormal posture, difficulty in swallowing, back and neck pain, headaches, and an inability to sleep without medication.

In May, 2004, Dr. Elof Eriksson requested authorization from MassHealth for a surgical procedure to remove the deformity. He submitted a form dated May 6, 2004, to MassHealth requesting review for procedure codes 15877 and 15876. On the form submitted, in a box requesting the "reason for request/medical justification," there were two handwritten notes: "Please see attached clinical note w/photos"; and "[p]lease note this request for clinical review is on behalf of a minor child under the age of 18 . . . with extenuating medical circumstances."

In a May 11, 2004, letter to MassHealth, Dr. Sandra Burchett, Ashley's attending physician at Children's Hospital Medical Center, stated that removal of the growth by liposuction was a medical necessity.[5] In a May 13, 2004, letter, Dr. Eriksson provided additional clinical information to MassHealth, and further stated the surgery was scheduled for May 27, 2004.[6]

At the hearing before a DMA hearing officer on November 1, 2004, Dr. Gail LoPreste[7] testified for MassHealth that she reviewed the request for procedure code 15876, which she identi-

---

[5]Dr. Burchett wrote that the "cervical fat pad affects Ashley's posture and results in a thrusting forward of the head, back pain and headaches. She has underlying thoracic kyphosis [curvature of the spine] which is exacerbated by this fat pad. This surgery is medically necessary for [her] comfort, movement and quality of life."

[6]The clinical note provided by Dr. Eriksson, dated April 26, 2004, described the "buffalo hump," stating its size was fifteen by fifteen by five centimeters, and that "[i]t creates a significant deformity of her upper back and neck," and concluding that it is "recommended to have removal of the buffalo hump with suction lipectomy."

[7]Dr. LoPreste was identified only as a physician and MassHealth representative. Dr. LoPreste later acknowledged at the hearing that she was a consultant to DMA. In a posthearing letter to the hearing officer, she identified herself as associate medical director of MassHealth.

Dr. Linda Clayton, also identified as a physician and MassHealth representa-

fied as liposuction.[8] She stated that the request initially was denied because it did not "meet medical necessity criteria," and was not a "covered procedure." However, she stated that "[s]ubsequently, in the course of trying to obtain further information . . . to support the evidence that Ashley's lipodystrophy was causing the headaches and other pain that she was having . . . , [a member of the staff] at Children's Hospital . . . told me that the procedure had, in fact, already been done." She stated that the request "would have to be denied because it's a [r]etroactive [r]equest." She referred, without further explanation, to the regulation "433.408A."

Ashley's counsel questioned Dr. LoPreste on her evaluation of the materials submitted by Dr. Erikkson and Dr. Burchett, but her answers merely elaborated on the additional information she previously stated she sought. She did not offer any explanation of the basis for the denial letter sent to Shaw, nor did she indicate whether she played any role in that communication.

*Medical necessity.* Although counsel for Ashley summarized and argued the evidence supporting the request for prior authorization, the hearing officer made no findings on the medical necessity of the request, because the procedure occurred without prior authorization and hence in his view the claim was properly denied. This was error.

We reject DMA's view that the review of Ashley's claim may be terminated because the procedure had been performed without authorization. There was no timely and reasonable alternative available when the request for authorization was denied. Without knowing the reason for the denial, Shaw requested a hearing on Ashley's behalf, and MassHealth's unfavorable ruling, on the ground that the procedure had not received prior authorization rather than on the merits of medical necessity, required her to appeal to the Superior Court and this court, a process that has taken over three and one-half years. To treat prior authorization as overriding all other considerations is not consistent with the regulation's purpose.

While we give deference to an agency's interpretation of its

tive, testified briefly, and stated she did not participate in the decision to deny coverage.

[8]Our record does not contain either the list of procedure codes or relevant portions of the physician manual.

own regulations, "courts will not hesitate to overrule agency interpretations when those interpretations are arbitrary, unreasonable, or inconsistent with the plain terms of the regulation itself." *Warcewicz* v. *Department of Envtl. Protection,* 410 Mass. 548, 550 (1991). We reject MassHealth's interpretation of the regulation as it was applied to terminate the review.

Reading the plain language of 130 Code Mass. Regs. § 433.408 (A)(1) & (2) as a whole, see note 4, *supra,* it is apparent that it principally is concerned with the medical necessity of a request as the controlling prerequisite for payment of services for certain procedures not otherwise covered by MassHealth. Recognizing that the request in this case was filed prior to the provision of the services, and still is pending, it cannot be considered a "retroactive request." A later decision, if favorable to the plaintiff on appeal, although not an authorization prior to the services, nonetheless meets the overarching requirement of the regulation that the determination of medical necessity be a prerequisite for payment. This interpretation harmonizes the regulation's requirements with its principal purpose.[9]

Since there was no hearing or decision on the merits by MassHealth as to the medical decision, the matter is remanded to MassHealth for a review of the medical necessity of the procedure. Such review is to be conducted according to defined criteria with an adequate record of the proceedings.

*Conclusion.* The judgment of the Superior Court is vacated. An order is to enter remanding the case to MassHealth for further proceedings consistent with this opinion.

*So ordered.*

---

[9]MassHealth has disputed the plaintiff's proposed application of a Federal regulation, 42 C.F.R. § 431.246 (2006), which provides that an agency may make retroactive corrective payments where it is determined that an earlier action was incorrect. Because our decision essentially moots that consideration, we need not consider it further.