NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-893                                              Appeals Court

ZONING BOARD OF APPEALS OF HANOVER  vs.  HOUSING APPEALS
COMMITTEE & another.[1]


No. 15-P-893.

Plymouth.     May 9, 2016. – August 29, 2016.

Present:  Agnes, Massing, & Kinder, JJ.


Housing.  Zoning, Housing appeals committee, Comprehensive
     permit, Low and moderate income housing.  Administrative
     Law, Agency's interpretation of regulation, Regulations.
     Municipal Corporations, Fees.


     Civil action commenced in the Superior Court Department on
March 11, 2014.

     The case was heard by William F. Sullivan, J., on a motion
for judgment on the pleadings.


     Jonathan D. Witten (Barbara M. Huggins with him) for the
plaintiff.
     Paul N. Barbadoro for Hanover Woods, LLC.
     Bryan F. Bertram, Assistant Attorney General, for Housing
Appeals Committee.


     MASSING, J.  Defendant Hanover Woods, LLC (developer),

filed an application with the plaintiff zoning board of appeals

---

[1] Hanover Woods, LLC.

of Hanover (board) for a comprehensive permit to build a 152-unit mixed-income housing project.  Considering the board's filing fee to be unreasonable, however, the developer paid only what it unilaterally determined to be a reasonable filing fee.  Deeming the application incomplete, the board did not accept it for filing.  By the time the developer paid the remainder of the fee, six weeks later, the town had qualified for a safe harbor under the Comprehensive Permit Act, G. L. c. 40B, §§ 20-23 (act), effectively giving the board unreviewable discretion to deny the developer's permit.

Nonetheless, the defendant Housing Appeals Committee (HAC) ultimately ordered the board to issue a comprehensive permit to the developer for a 200-unit project.  The board appeals from a judgment of the Superior Court affirming the HAC's order.  Because we conclude that the HAC erred in determining that the developer's application was complete on the date of its incomplete submission, rather than on the date the filing fee was paid in full, we reverse.

Background.  On October 22, 2009, the developer filed an application for a comprehensive permit for a project to be called Woodland Village, consisting of 152 units to be offered for sale, as well as parking spaces and other site improvements on a twenty-four acre parcel of land in Hanover (town).  Thirty-eight of the units, or twenty-five percent, were designated to

be affordable units.  Under the board's fee schedule, the filing fee for a project of that size was $250 per housing unit, or $38,000.

Accompanying its application, the developer included a check for $8,500 with a letter of explanation signed by John J. Sullivan, the developer's manager.  In his letter, Sullivan asserted that the $38,000 fee was "inconsistent" with the act and the applicable regulations, which require reasonable fees. Sullivan stated, "The applicant considers this fee unreasonable."  He claimed that a reasonable filing fee would be $2,500, based on "the fee imposed on a traditional project pending before the planning board."  He added "a $6,000 initial consultant review deposit," attaching a number of conditions to the board's use of the deposit.

In a letter dated November 3, 2009, the board informed the developer that its application was incomplete and would not be accepted for filing until the board received the required fee. The developer responded in a letter dated December 3, 2009. Asserting that it had filed "a complete application, which included an appropriate filing fee," but that the board's position left it "in the untenable position of either appealing the [b]oard's denial of its application or paying an additional $30,000 [sic] to allow the merits of its proposal to be heard," the developer "determined to advance the [b]oard's fee under

protest." It enclosed a check for $29,500, reserving its rights "with respect to any future challenge of [the board's] comprehensive permit filing fee or with respect to the completeness of [the developer's] application to the [b]oard filed on October 22, 2009." The developer added, "Having established an October 22, 2009, filing date, [it] is willing to accommodate the [b]oard by voluntarily extending the deadline for the [b]oard to open a public hearing on this matter until thirty days from the date of this letter."

Meanwhile, on October 29, 2009, the board had approved a comprehensive permit for an unrelated, sixty-six unit affordable housing project called Barstow Village. All of the units were to be made available to income-qualified seniors at below-market rates. On December 1, 2009, as a result of the Barstow Village approval, the Department of Housing and Community Development (DHCD) certified that the town was in compliance with its "Housing Production Plan" under 760 Code Mass. Regs. § 56.03(4)(f) (2008).[2] The certification was made effective as of the date of the Barstow Village approval, October 29, 2009, for a two-year period ending October 28, 2011. The certification of compliance established a regulatory safe

---

[2] All regulatory citations in this opinion are to the version of 760 Code Mass. Regs. §§ 56.01-56.08 as amended in 2008. The subsequent, and still current, version of the regulations is the 2012 version. None of the language we quote from the 2008 regulations appears to have been altered in 2012.

harbor, effectively making any decision by the board to deny a comprehensive permit application made during that period unreviewable by the HAC. See discussion infra.

The board informed the developer of the certification and the resulting safe harbor in a letter dated December 3, 2009 (which the developer did not receive until after it mailed its own December 3 letter discussed above). The board explained,

> "If or when you decide to submit a complete Comprehensive Permit application for 'Woodland Village' to this board for acceptance (see our letter of November 3rd, 2009), please be advised that the board may -- at its discretion, and upon review of your project -- consider that a denial of the permit or the imposition of conditions or requirements would be 'Consistent with Local Needs.'"

On December 17, 2009, the developer filed an interlocutory appeal with the HAC challenging the reasonableness of the filing fee and the board's intention to consider the developer's application with the benefit of the safe harbor protection. See 760 Code Mass. Regs. § 56.03(8)(c). In a decision dated June 21, 2010, a three-member panel of the HAC[3] found the $38,000 filing fee to be reasonable. However, the panel further determined that the board could not invoke the safe harbor protection because the developer's application, though lacking the full filing fee, should have been considered filed as of October 22, 2009.

---

[3] The HAC is a five-member body within DHCD. See G. L. c. 23B, § 5A.

Complying with the HAC's interlocutory decision, the board then proceeded on the developer's application, holding public hearings over fourteen sessions concluding on July 19, 2011. On September 18, 2011, the board granted the developer a comprehensive permit for the 152-unit, for-sale project, subject to a number of conditions. Following the board's approval, the developer filed an appeal with the HAC challenging certain conditions relating to the site.

While the appeal was pending, on December 9, 2011, the developer filed a "Notice of Change in Applicant's Proposal" with the HAC. See 760 Code Mass. Regs. § 56.07(4)(a). It requested, among other changes, an increase in the number of units from 152 to 200, and a change in the ownership structure of the development from for-sale condominiums to rental units. The HAC presiding officer found that the requested changes were "substantial" and remanded the matter to the board for further review. See ibid.

On June 28, 2012, the board denied the proposed changes. The developer appealed that determination to the HAC. In a decision dated February 10, 2014, the HAC ordered the board to issue a comprehensive permit for the 200-unit rental project. The board sought judicial review, and on February 27, 2015, a Superior Court judge, acting on cross motions for judgment on

the pleadings, ordered judgment for the defendants, affirming the HAC's decision. The board appeals from the judgment.

Discussion. 1. Statutory and regulatory overview. The act "is designed to facilitate the development of low and moderate income housing in communities throughout the Commonwealth." Zoning Bd. of Appeals of Holliston v. Housing Appeals Comm., 80 Mass. App. Ct. 406, 413 (2011). "The procedural path and applicable standards of review have been 'thoroughly canvassed in earlier opinions.'" Ibid., quoting from Board of Appeals of Woburn v. Housing Appeals Comm., 451 Mass. 581, 582 (2008). We summarize only the aspects of the act relevant to this appeal.

"A developer may appeal a board's denial of an application for a comprehensive permit to the HAC." Eisai, Inc. v. Housing Appeals Comm., 89 Mass. App. Ct. 604, 609 (2016), citing G. L. c. 40B, § 22. However, the act permits municipalities to attain certain safe harbors signifying that they are currently providing their share of affordable housing. See Zoning Bd. of Appeals of Wellesley v. Ardemore Apts. L.P., 436 Mass. 811, 815-816 (2002); Taylor v. Housing Appeals Comm., 451 Mass. 149, 151-152 (2008); G. L. c. 40B, § 20; 760 Code Mass. Regs. § 56.03(1). For the period that a municipality is within one of these safe harbors, the "HAC is without authority to order that board to

grant a comprehensive permit or to modify or remove conditions." Taylor, supra at 152.[4]

One such safe harbor applies when "[DHCD] has certified the municipality's compliance with the goals of its approved Housing Production Plan [HPP], in accordance with 760 [Code Mass. Regs. §] 56.03(4)." 760 Code Mass. Regs. § 56.03(1)(b). A municipality with an approved HPP may request certification of municipal compliance "if it has increased its number of SHI[5] Eligible Housing[6] units in an amount equal to or greater than

_____

[4] See G. L. c. 40B, § 20 (definition of "Consistent with local needs"); 760 Code Mass. Regs. § 56.02(a) (one meaning of "Consistent with Local Needs" is that "one or more of the grounds set forth in 760 [Code Mass. Regs. §] 56.03[1] have been met"); 760 Code Mass. Regs. § 56.03(1) (stating, with respect to five enumerated safe harbors, that "[a] decision by a Board to deny a Comprehensive Permit, or . . . grant a Comprehensive Permit with conditions, shall be upheld if one or more of the following grounds has been met as of the date of the Project's application"); 760 Code Mass. Regs. § 56.07(3)(a) ("[A] determination that a municipality has satisfied one or more of the grounds set forth in 760 [Code Mass. Regs. §] 56.03[1] . . . shall be an irrebuttable presumption").

[5] "Subsidized Housing Inventory (SHI) -- means the list compiled by the [DHCD] containing the count of Low or Moderate Income Housing units by city or town." 760 Code Mass. Regs. § 56.02.

[6] "SHI Eligible Housing -- means, solely for the purposes of 760 [Code Mass. Regs. §] 56.03: (a) any unit of Low or Moderate Income Housing; (b) such other housing units in a Project as may be so defined under the [DHCD]'s guidelines; and (c) any other housing unit as may be allowed under the [DHCD]'s guidelines, provided that such housing unit is subject to a Use Restriction and Affirmative Fair Marketing Plan, and regardless of whether or not such unit received a Subsidy." 760 Code Mass. Regs. § 56.02.

its 0.50% production goal for that calendar year." 760 Code Mass. Regs. § 56.03(4)(f). If DHCD certifies the municipality as being in compliance with its HPP, the safe harbor takes effect on the date the target was reached and remains effective for either one or two years, depending on the percentage increase. See ibid. The HAC must uphold a zoning board of appeals decision on a comprehensive permit application if the municipality's HPP certification is in effect "as of the date of the Project's application." 760 Code Mass. Regs. § 56.03(1).

2. Review of HAC decision. In its interlocutory review of the dispute between the developer and the board over the reasonableness of the filing fee and the effective date of the developer's application, the HAC panel determined that the $38,000 filing fee was reasonable. However, on the question "whether or not the developer's October 22, [2009,] submission to the [b]oard of its application without the full filing fee constitutes an application for the purposes of § 56.03(1)," the panel concluded that "the developer's failure to pay the full filing fee with the application did not invalidate the application" and thus ruled that "[t]he [b]oard may not invoke safe harbor protections."

The HAC has authority to entertain "motions concerning sufficiency of the application under 760 [Code Mass. Regs. §] 56.05(2)." 760 Code Mass. Regs. § 56.06(5)(b)(3). Here, the

HAC panel observed that the regulations and precedents allow "flexibility with regard to the contents of a local comprehensive permit application."  Specifically, the first paragraph of § 56.05(2),[7] listing the items that normally constitute "a complete description of the proposed Project," further states that "[f]ailure to submit a particular item shall not necessarily invalidate an application."  The panel reasoned that because "[t]he same section of our regulations permits [b]oards to require filing fees" (see § 56.05[2], second par.), the failure to submit the full filing fee likewise does not invalidate an application.  The panel concluded, "Although such a fee is in no sense optional, the regulatory language implies that where there is an honest mistake or good faith disagreement -- if the filing fee is inadvertently omitted, submitted in an incorrect amount, or, as here, challenged by the developer -- the application is not invalid."

The panel's decision was contrary to the DHCD's regulations.  Under G. L. c. 40B, § 22, a decision of the HAC is subject to review in accordance with G. L. c. 30A.  "The reviewing judge considers whether the HAC's decision was arbitrary, capricious, lacking substantial evidence, or otherwise contrary to the law, and whether the substantial rights of any party have been prejudiced."  Eisai, Inc., 89

_____

[7] See note 8, infra.

Mass. App. Ct. at 610, citing Zoning Bd. of Appeals of Sunderland v. Sugarbush Meadow, LLC, 464 Mass. 166, 172 (2013). See G. L. c. 30A, § 14(7).

"We interpret a regulation in the same manner as a statute, and according to traditional rules of construction." Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 550 (1991). "We ordinarily accord an agency's interpretation of its own regulation considerable deference.  However, this principle is deference, not abdication, and courts will not hesitate to overrule agency interpretations when those interpretations are arbitrary, unreasonable, or inconsistent with the plain terms of the regulation itself."  Ibid. (citation omitted).  See Nuclear Metals, Inc. v. Low-Level Radioactive Waste Mgmt. Bd., 421 Mass. 196, 209 (1995) ("[T]he interpretation of statutory and regulatory language and the validity of the agency's interpretation of its own regulation . . . are questions of law, appropriate for [a court's] resolution"); Board of Appeals of Woburn v. Housing Appeals Comm., 451 Mass. at 590 (by "brush[ing] aside the language of the governing statute and the regulations of the [DHCD]," HAC "exceeded its authority").

The DHCD's regulations permit local zoning boards of appeals to adopt local rules for the submission and review of comprehensive permit applications.  See 760 Code Mass. Regs. § 56.05(1).  The regulations further outline the components of

an application.  See 760 Code Mass. Regs. § 56.05(2), which we reproduce at the margin.[8]  Depending on local practices, an

_____

[8] Title 760 Code Mass. Regs. § 56.05(2) reads in full as follows:

"Elements of Submission.  Filing Fees.  The Applicant shall submit to the Board an application and a complete description of the proposed Project.  Normally the items listed below will constitute a complete description.  Failure to submit a particular item shall not necessarily invalidate an application.  The Board shall not require submissions for a Comprehensive Permit that exceed those required by the rules and procedures of Local Boards for review under their respective jurisdictions.

"(a) preliminary site development plans showing the locations and outlines of proposed buildings; the proposed locations, general dimensions and materials for streets, drives, parking areas, walks and paved areas; and proposed landscaping improvements and open areas within the site. . . . ;

"(b) a report on existing site conditions and a summary of conditions in the surrounding areas . . . ;

"(c) preliminary, scaled, architectural drawings. . . . ;

"(d) a tabulation of proposed buildings by type, size (number of bedrooms, floor area) and ground coverage, and a summary showing the percentage of the tract to be occupied by buildings, by parking and other paved vehicular areas, and by open areas;

"(e) where a subdivision of land is involved, a preliminary subdivision plan;

"(f) a preliminary utilities plan showing the proposed location and types of sewage, drainage, and water facilities, including hydrants;

"(g) the Project Eligibility letter, showing that the Applicant fulfills the requirements of 760 [Code Mass. Regs. §] 56.04(1);

application can include two or three components.  Under the
first paragraph of § 56.05(2), "[t]he Applicant shall submit to
the Board an application and a complete description of the
proposed Project."  The regulations do not define or describe
the contents of the "application" document.  The "items" that
"constitute a complete description" appear in an indented list
immediately under the first paragraph of § 56.05(2).  With
respect to these items, the first paragraph further states,
"Failure to submit a particular item shall not necessarily
invalidate an application."  760 Code Mass. Regs. § 56.05(2).

The second paragraph of § 56.05(2) provides for the third
component of an application package:

> "The Board may require the payment of a reasonable
> filing fee with the application, if consistent with
> subdivision, cluster zoning, and other fees reasonably
> assessed by the municipality for costs designed to defray
> the direct costs of processing applications, and taking
> into consideration the statutory goal of [G. L.] c. 40B,
> §§ 20 through 23 to encourage affordable housing
> development."

---

> "(h) a list of requested Waivers."

> "The Board may require the payment of a reasonable
> filing fee with the application, if consistent with
> subdivision, cluster zoning, and other fees reasonably
> assessed by the municipality for costs designed to defray
> the direct costs of processing applications, and taking
> into consideration the statutory goal of [G. L.] c. 40B,
> §§ 20 through 23 to encourage affordable housing
> development."

The HAC panel erred in applying to filing fees the language concerning "[f]ailure to submit a particular item" of "a complete description of the proposed Project."  As indicated by the title of § 56.05(2) -- "Elements of Submission.  Filing Fees." -- the project description and the filing fee are separate aspects of the comprehensive permit application.  While the language of the regulation admits some flexibility regarding the items that constitute a complete project description, this language does not spatially or logically encompass the filing fee, which appears in a separate paragraph.

We are mindful that the intent of the act is to promote the continued development of affordable housing and that the act and its implementing regulations "must be construed in a manner that effectuates [that] intent."  Board of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339, 354 (1973).  Moreover, the paragraph pertaining to filing fees states that the reasonableness of the fee is to be determined by "taking into consideration the statutory goal of [the act] to encourage affordable housing development."  760 Code Mass. Regs. § 56.05(2).  Accordingly, we "should be slow to decide that a public board has acted unreasonably or arbitrarily and should search for some ground which reasonable [people] would regard as a proper basis for the agency's action."  Navy Yard Four Assocs., LLC v. Department of Envtl. Protection, 88 Mass. App.

Ct. 213, 223 (2015), quoting from Fioravanti v. State Racing Commn., 6 Mass. App. Ct. 299, 302 (1978). We detect no such grounds for the HAC's decision here.

Although the regulations are silent with respect to the effective date of an application to a local zoning board of appeals for a comprehensive permit filed without payment of the full fee, they do address the necessity of paying the filing fee in an appeal to the HAC: "A fee shall be paid by the appellant upon the filing of the initial pleading . . . . Fees shall be payable, in full, . . . upon the filing of appeals . . . . No initial pleading will be accepted for filing without the minimum fee." (Emphases supplied.) 760 Code Mass. Regs. § 56.06(4)(f). This section of the regulations underscores the arbitrary nature of the HAC's conclusion that, unlike the HAC itself, zoning boards of appeals must accept applications without full payment of the filing fee. The HAC unreasonably applied a different standard to the board.

Although the regulation governing appeals to the HAC allows for the reduction of the filing fee when, "in the judgment of the presiding officer, such action is warranted by special circumstances and is in the public interest," the regulation contemplates that an appellant must obtain such a reduction by a timely-filed motion: "Any motion for reduction of fees shall be filed with the initial pleading." Ibid. Here, the developer

did not file a motion with the board or even make a request for a reduction of fees.  Rather, the developer unilaterally determined what it considered to be a reasonable fee.  It did not point to any special circumstances, hardship, or inability to pay the full fee, nor did it contend that a reduction of fees for its application would be in the public interest.  Indeed, the HAC ultimately determined that the fee was reasonable.

The filing of a fee with a comprehensive permit application is not a minor detail.  Contrast Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass. App. Ct. 245, 251 n.6 (2010) (in determining whether landowner had unconditional right to obtain permit for single-family home prior to amendment of by-law, where permit fee "is not required at any set time . . . the time when [landowner] actually paid the fee is a minor detail that is irrelevant to determining when her 'unconditional right' to the building permit arose").  The fee is necessary to "defray the direct costs of processing applications," 760 Code Mass. Regs. § 56.05(2), which can be substantial.  "[T]he act establishes a streamlined comprehensive permitting procedure, permitting a developer to file a single application to the local zoning board of appeals for construction of low or moderate income housing." Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 29 (2006) (citation omitted).  The filing of an application triggers certain required, time-sensitive actions by the

municipality. "Within seven days of receiving a <u>complete</u> application" (emphasis supplied), a zoning board of appeals must notify all relevant local boards -- including the city council or board of selectmen, the planning board, the conservation commission, the historical commission, the board of health, the water or sewer commission or district, and the fire, police, and traffic departments[9] -- of the application and invite their participation as deemed necessary or helpful in review of the project. 760 Code Mass. Regs. § 56.05(3). The board must open a public hearing on the application "within 30 days of its receipt of a <u>complete</u> application" (emphasis supplied), and the hearing generally "shall not extend beyond 180 days from the date of opening the hearing." <u>Ibid</u>. It is unreasonable, and frustrates the purpose of the act, to require a municipality to mobilize its resources to entertain a comprehensive permit petition without full payment of the applicable filing fee.

A developer seeking a fee reduction or wishing to challenge its reasonableness is not without recourse. Absent any guidance in the regulations, however, the board is entitled to exercise reasonable discretion in how it will entertain such requests or challenges. See 760 Code Mass. Regs. § 56.05(1). It might, as the HAC's appeals procedure allows, entertain motions filed with

---

[9] See 760 Code Mass. Regs. § 56.02 (definition of "Local Board").

the application package. However, absent a settled mechanism, the developer who fails to pay the full filing fee with its application does so at its peril. The safest procedure is to pay the full fee while simultaneously requesting a reduction, which can be refunded if the challenge is successful. See Sunderland, 464 Mass. at 189-191 (HAC ordered zoning board of appeals to repay $10,000 portion of filing fee to applicant). This procedure applies in many familiar settings. For example, "[a]s a condition precedent for the [Appellate Tax] Board's jurisdiction to hear the appeal [from the assessors' refusal to abate a tax], the person must first pay the specified sum of the assessed tax." William B. Rice Eventide Home, Inc. v. Assessors of Quincy, 69 Mass. App. Ct. 867, 871 (2007), citing G. L. c. 59, §§ 64, 65. See Boston Five Cents Sav. Bank v. Assessors of Boston, 313 Mass. 762, 770-771 (1943) (same).[10] See also Choate v. Assessors of Boston, 304 Mass. 298, 303 (1939) ("The prompt payment of taxes is necessary for the proper administration of government. There are instances where the payment of the tax is a condition precedent to seeking or securing an abatement"); American Trucking Assns., Inc. v.

_____

[10] A person appealing to the Appellate Tax Board "who claims to be unable presently to pay the amount of tax remaining unpaid" may file a motion to be excused from paying the balance, but must do so "on or before the last date for payment of said tax without incurring interest." G. L. c. 59, § 65B, as appearing in St. 1975, c. 677, § 3.

Secretary of Admin., 415 Mass. 337, 349-350 (1993) ("most common" remedy for imposition of State tax later found to be unconstitutional "is refund of the fees paid during the contested tax period"); Patriots Resorts Corp. v. Register of Deeds for the County of Berkshire, N. Dist., 71 Mass. App. Ct. 114, 121 (2008) (plaintiff entitled to a refund for excess filing fees collected based on erroneous interpretation of statute specifying fees for recording documents); G. L. c. 152, § 11A(2) (in workers' compensation case, party appealing conference order based on medical issues must file fee to defray cost of independent medical examination, to be refunded if party prevails on appeal). Cf. Big D Carpets, Inc. v. The Welch Group, Inc., 37 Mass. App. Ct. 312, 314 (1994) (under Mass.R.Civ.P. 3, as amended, 385 Mass. 1215 [1982], "all that is now required, in the usual case, to commence a civil action and vest the court with jurisdiction is to file the complaint in court with the required entry fee").

Conclusion. The HAC's determination that the developer's application was filed as of October 22, 2009, was arbitrary and inconsistent with DHCD regulations. See G. L. c. 30A, § 14(7). The board did not err in considering the application to have been filed on the date it received the full fee from the developer. The board was therefore entitled to consider the developer's application with the benefit of the safe harbor that

existed under 760 Code Mass. Regs. § 56.03(1)(b) on the latter date.  The judgment of the Superior Court affirming the HAC's decision ordering the board to issue a comprehensive permit for the 200-unit proposal is reversed.  A new judgment shall enter reversing that decision, vacating the HAC's interlocutory decision as to the availability of safe harbor, and remanding the matter to the board for further proceedings consistent with this opinion.[11,12]

So ordered.

---

[11] It is unclear whether the board, with the availability of the safe harbor, would have denied the original application on that basis without a local hearing.  Under 760 Code Mass. Regs. § 56.03(1), "a Board may at its sole discretion elect to proceed with the full local hearing, and ultimately to approve a Comprehensive Permit, even though one or more of the [safe harbor] grounds have been met."  We consider the board to retain this discretion on remand.

[12] Our determination of the safe harbor question makes it unnecessary to address the other issues argued by the parties, some of which we touched upon recently in Eisai, Inc. v. Housing Appeals Comm., 89 Mass. App. Ct. 604 (2016).