GASKINS vs. SILVA, 101 Mass. App. Ct. 555

 
 TONY B. GASKINS vs. STEVEN SILVA [Note 1] & others. [Note 2]

101 Mass. App. Ct. 555
 June 6, 2022 - August 22, 2022

Court Below: Superior Court, Worcester County
Present: Rubin, Henry, & Grant, JJ.

 

No. 21-P-846.

Imprisonment, Safe environment. Constitutional Law, Imprisonment. Due Process of Law, Prison regulation. Administrative Law, Agency's interpretation of regulation. Practice, Civil, Summary judgment.

In a civil action brought by the plaintiff prisoner challenging the decision of the defendant Department of Correction employees (department) to forward to the plaintiff only the first five pages of two legal documents (a fifteen-page trial transcript sent to him by the mother of a prisoner incarcerated elsewhere in the Commonwealth and an appellate brief sent to him by a Massachusetts prisoner incarcerated in a different State's prison) on the basis of the department's construction of 103 Code Mass. Regs. § 481.05 as prohibiting receipt by any prisoner of more than five pages of any printed material, including anything typed, the Superior Court judge erred in granting summary judgment in favor of the department, where the department's construction of the regulation was at clear variance with its plain language and did not allow the department to withhold the brief and transcript at issue. [557-562]

In a civil action brought by the plaintiff prisoner challenging the treatment by the defendant Department of Correction employees (department) of a birthday card sent to the plaintiff by his daughter and written with a glitter pen as contraband, based on the department's construction of regulations, including 103 Code Mass. Regs. § 481.13(2), the department was entitled to summary judgment, where the defendants' treatment of the card as contraband did not violate the regulations, where nothing in the record raised a genuine issue of material fact that the department provided notice consistent with due process, and where, given the summary judgment record, accommodating the plaintiff's asserted right under the First Amendment to the United States Constitution would have a deleterious impact on prison safety and administration and there were no obvious easy alternatives to the rule articulated given the likely costs and difficulty of individual testing for contraband of every item containing glitter that might enter the prison. [562-564]

This court remanded for consideration by the trial court in the first instance a claim in a civil action brought by a plaintiff prisoner challenging a determination 

 Page 556 

by the defendant Department of Correction employees that a court decision and order sent to the plaintiff by the mother of a prisoner incarcerated elsewhere in the Commonwealth constituted forbidden inmate-to-inmate correspondence being sent through an intermediary, where the claim had been raised below but not addressed by the judge. [564-565]

Civil action commenced in the Superior Court Department on April 10, 2018.

 The case was heard by David Ricciardone, J., on a motion for summary judgment.

Tony B. Gaskins, pro se.

Heidi D. Handler for the defendants.

 RUBIN, J. This case involves the seizure by correction officers of items of mail sent to the plaintiff, an inmate in the lawful custody and care of the Department of Correction (department) who is housed at the Souza Baranowski Correctional Center (SBCC). The defendants are the superintendent of SBCC and several individuals employed there. The plaintiff brought this suit seeking declaratory and injunctive relief challenging the defendants' conclusion that five items of mail sent to him were contraband. In his appeal from the allowance of summary judgment for the defendants, the plaintiff claims only that four of these pieces of mail were improperly deemed contraband, and that their seizure violated the regulations concerning inmate mail, 103 Code Mass. Regs. §§ 481.00 (2017), [Note 3] as well the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment. 

 Three of the pieces of mail at issue contained legal documents: a trial transcript, a legal brief, and a court decision and order. Notably, the inmate mail regulations do not identify any category of mail as "legal mail." Rather, they distinguish between "privileged mail," 103 Code Mass. Regs. § 481.10, which is subject to one legal regime, and nonprivileged correspondence, which is subject to another. Privileged mail is defined by the identity of the correspondent, not by its contents - although under the regulations it may not be used "for personal, non-legal or non-official correspondence . . . or the transmittal of communications to be given or forwarded to persons not specified in" the definition of privileged mail, 103 Code Mass. Regs. § 481.10(2) - and includes mail from courts or attorneys, see Code Mass. Regs. 

 Page 557 

§ 481.10(1). [Note 4] The correspondence at issue in this case did not come from a court, attorney, or other individual identified in the regulatory definition of "privileged mail," and it is undisputed that it was all "nonprivileged" correspondence within the meaning of the regulations, and was subject under the regulations to the restrictions described infra. 

 Our review of the allowance of a motion for summary judgment is de novo; we view the evidence in the light most favorable to the nonmoving party, here the plaintiff. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021).

 Discussion. 1. Scope of "publication." First, the plaintiff challenges the decision of the defendants to forward to him only the first five pages of two legal documents, a trial transcript that was fifteen pages long and sent to him by Barbara Babcock, the mother of an individual who is currently incarcerated elsewhere in the Commonwealth, and an appellate brief sent to him by a Massachusetts prisoner incarcerated in a New Jersey State 

 Page 558 

prison. [Note 5] He argues that this was done in violation of the regulations, and of the First Amendment. [Note 6]

 The defendants assert that their actions with respect to these pieces of mail were authorized by 103 Code Mass. Regs. § 481.05, which is entitled "Definitions." That section includes the definitions of terms used throughout 103 Code Mass. Regs. §§ 481.00. With respect to "Publication," § 481.05 reads: 

 "Publication. Any book, booklet, pamphlet, magazine, periodical, newsletter, newspaper, or similar document, including stationery and greeting cards, published by any individual, organization, company, or corporation which is distributed or made available through any means or media for a commercial purpose. Publication includes any portion extracted, photocopied, or clipped from such items, provided, however, that an inmate may receive a maximum of five pages per day, except Sundays and postal holidays, of a portion extracted, photocopied, or clipped from such items as an attachment to personal correspondence as long as the material is not prohibited by 103 [Code Mass. Regs §] 481.00."

 The department has construed this regulation to prohibit receipt by any prisoner of more than five pages of any "printed" material, including anything typed -- although the words "printed" or "typed" are contained nowhere in the regulation -- and at the same time it disregards the words "for a commercial purpose" that are contained in the regulation. On this basis, the defendants forwarded to the plaintiff only five pages of the transcript and brief described above. At oral argument, counsel for the department, representing the defendants, clarified that the department's construction of the regulation did not turn on whether the material was printed or published commercially. Indeed, the department's construction is that there "does not need to be a financial component" involved in the creation or distribution of printed material 

 Page 559 

for it to be covered. In response to a question from the court at oral argument, counsel made clear that a prisoner would not be allowed to receive more than five pages of a term paper typed by his child if it were sent as an attachment to a letter, or, indeed, more than five pages of a typed letter from his child (although counsel asserted that no length limitation would be placed on a handwritten letter, which the department does not construe to be within the definition of "publication"). 

 "An agency's interpretation of its own regulation is accorded considerable deference." Welford v. Nobrega, 411 Mass. 798, 804-805 (1992). However, "courts will not hesitate to overrule agency interpretations when those interpretations are . . . unreasonable, or inconsistent with the plain terms of the regulation itself." Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 550 (1991). In this case, the department's construction of the regulation is at clear variance with its plain language. The five-page limitation in the definition's second sentence applies only to "a portion extracted, photocopied, or clipped from [the] items [listed in the first sentence] as an attachment to personal correspondence," and those items are limited to those "distributed or made available through any means or media for a commercial purpose." The department's construction of the regulation ignores that plain language and, therefore, is not due deference.

 Instead, we must examine the regulation de novo, "interpret[ing the] regulation in the same manner as a statute," "accord[ing] the words of [the] regulation their usual and ordinary meaning." Warcewicz, 410 Mass. at 550. 

 Doing so, we conclude that the plain language of the regulation does not encompass the materials at issue in this case. The defendants' own proposed statement of undisputed facts calls the first document "a trial transcript," that it later describes as "photocopies attached to personal correspondence." The proposed statement describes the second enclosure only as "an appellate brief." But, even assuming both the brief and trial transcript were not originals, but were "extracted, photocopied, or clipped" from an original, a brief and a trial transcript are not "distributed or made available for a commercial purpose." 

 Although the record does not tell us the immediate source of the brief and transcript at issue here, at oral argument the defendants suggested that, because a fee may be charged for them, documents obtained from the Public Access to Court Electronic Records (PACER) system, which provides access to some 

 Page 560 

Federal court filings and decisions, should be treated as having been "made available . . . for a commercial purpose." But PACER is run by the Administrative Office of the United States Courts on behalf of the Federal Judiciary. See In re Maple, 434 B.R. 363, 368 n.2 (E.D. Va. 2010) (PACER "is an electronic public access service managed by the Administrative Office of the United States Courts that provides access to public documents from all of the United States Federal Courts"). Where the government makes legal documents available through electronic means for public consumption, the fact that some fee may be charged to some users to cover costs does not mean the documents are being distributed or made available for a commercial purpose. Cf., e.g., In re Application for Exemption from Access Fees by Jennifer Gollan & Shane Shifflett, 728 F.3d 1033, 1035 (9th Cir. 2013) (describing statutory authorization for PACER's fee structure). 

 Our reading of this regulation is reinforced by the treatment of "publications" throughout the rest of the regulations. To begin with, fairly read, the regulations envision entire copies of subscription publications such as magazines, not only five pages, being delivered to inmates when they are not excerpted attachments. Thus, 103 Code Mass. Regs. § 481.113(3), entitled "Incoming Publications" states: 

"The Deputy Superintendent may reject a publication within a reasonable time of receipt to prevent interference with institutional goals of security, order, rehabilitation, or if the publication facilitates, encourages, and/or instructs in criminal activity: The Deputy Superintendent may not reject a publication solely because its content is religious, philosophical, political, social, or because its content is unpopular or repugnant. . . . An inmate may not receive more than one copy of a particular issue of a publication." 

And, as to their commercial character, unlike other correspondence, with respect to which the regulations refer to the "sender," the regulations apparently envision "publications" having a "publisher": 

"When any publication addressed to an inmate is received at the institution but is not delivered to an inmate for any reason set forth in 103 [Code Mass. Regs. §] 481.14 [which provides a list of reasons pieces of correspondence may be prohibited], the inmate, and the publisher when identifiable, shall be promptly notified, in writing, of the following:

 Page 561 

 "(a) the reason(s) for refusing to deliver the publication to an inmate(s);

 "(b) the fact that a written appeal may be submitted by the inmate or publisher to the Superintendent."

103 Code Mass. Regs. § 481.15(2).

 The defendants assert that limiting all printed material (including typed material) in incoming inmate correspondence to five pages is necessary to serve an important purpose: 

"Staff must review the entirety of all non-privileged mailings to include enclosures. Such review is essential because, even if a document appears to be a preprinted publication, and acceptable at first glance, individuals may alter typed data to look like legal work to avoid detection. Likewise civilians may mail in printed publications which facilitate, encourage, or instruct in, criminal activity, but disguise the documents as legal materials. Department staff must carefully review all attachments to non-privileged correspondence to ensure that no material enters the institution which would interfere with safety, security, order and discipline. The five (5) page limit on publications is necessary because absent a page limit on copies of printed materials the burden associated with review would soon become overwhelming and due to the volume staff would have difficulty scanning all of the attachments." 

The defendants thus assert that there must be hand inspection of each page of anything forwarded to a prisoner.

 We may assume without deciding that this is true. But, given the scope of the regulation limiting the number of pages to five, it does not seem that it is directed at the problem the defendants posit, and neither the defendants nor we are empowered to expand the regulation to cover materials not described therein. While attachments or correspondence not covered by the regulation thus may have to be examined page by page, should the department wish to include noncommercial attachments like the legal materials at issue here in a five-page-limit policy, an amended regulation will be required. "[O]nce having exercised its power to promulgate regulations, the department may not infinitely manipulate or expand their content." Warcewicz, 410 Mass. at 552. Of course, we express no opinion on the constitutionality or permissibility of any such regulation that might be adopted.

 Page 562 

 In sum, the regulation on which the defendants rely did not allow them to withhold the brief and transcript at issue. Consequently, summary judgment should not have entered for the defendants with respect to these pieces of mail. In light of this conclusion, we need not address the plaintiff's constitutional claims with respect to these two pieces of mail, including his claim that "legal mail" from third parties whose mail will not be classified as "privileged" under the regulations must be examined under the regulatory regime currently reserved for privileged mail.

 2. Glitter pen. The next piece of mail at issue is a birthday card sent to the plaintiff on July 26, 2017, by his daughter that was written with a glitter pen.

 We turn first to whether the determination that the glitter pen card was contraband was consistent with the regulations. The regulations state that "the Deputy Superintendent or his or her designee may disapprove receipt by an inmate of non-privileged correspondence, the contents of which fall as a whole or in significant part into any one of the following categories: . . . (h) The correspondence facilitates the introduction of contraband drugs, etc." 103 Code Mass. Regs. § 481.13(2). 

 According to the affidavit of defendant Steven Silva, the superintendent, 

"[g]litter and glitter products pose safety and security concerns. Specifically, glitter conceals other substances that may be hidden within the texture of the product. In connection with items that are mailed to institutions, glitter may be used to cover or conceal alterations made to paper beneath glitter, such as soaking or otherwise adulterating paper with illicit substances and/or drugs. These are some of the reasons the department placed a ban on glitter products in any form." 

 The plaintiff asserts that there is a genuine issue of material fact. Of course, we have no expertise with respect to whether glitter pens can in fact be used in the way described in the affidavit. But the plaintiff has not included in the summary judgment record any evidence that raises a genuine issue of material fact about that. 

 He asserts that the card itself was not tested for contraband, but provides no authority for the proposition that the department's construction of the regulations to prohibit a category of correspondence with risky physical characteristics such as those 

 Page 563 

described in Silva's affidavit is not reasonable. Because we defer to the department's reasonable construction of the regulation, Carey v. Commissioner of Correction, 479 Mass. 367, 371 (2018), we see no error in the conclusion that the defendants were entitled to summary judgment on the claim that the treatment of the card containing writing in glitter pen did not violate the regulations.

 The plaintiff also asserts that he was not put on notice that the use of glitter pen would lead to the treatment of his daughter's card as contraband, and that the department's treatment of that item as categorically prohibited violated his due process rights.

 The defendants do not contest that the plaintiff was entitled to notice, but point to a memorandum to "[s]taff, [v]isitors, and [v]olunteers," from the SBCC superintendent, dated December 30, 2016, that states, "any mail to include cards, letters, etc., containing a glitter type substance will not be allowed into the facility and will be considered contraband." The memorandum indicates that a copy was sent to "Housing Units," and the department asserts that this means it was "posted . . . in all SBCC housing units." 

 With respect to the question of notice, the plaintiff asserts only that he "never viewed" any such memorandum. But that is not the question. He does not argue that a memorandum posted in the housing units would have been inadequate to provide the required notice, and there is nothing in the factual record before us that raises a genuine issue of fact whether the memorandum was so posted. Consequently, on this record, due process provides no basis for denial of summary judgment in favor of the defendants.

 As for the First Amendment, the parties agree that the test articulated in Turner v. Safley, 482 U.S. 78 (1987), applies. Inmate mail of course implicates the First Amendment rights of both the inmate and the sender, see Champagne v. Commissioner of Correction, 395 Mass. 382, 392 (1985), but under Turner, restrictions on a prisoner's First Amendment rights are permissible if they are "reasonably related to legitimate penological interests." Cacicio v. Secretary of Pub. Safety, 422 Mass. 764, 770 (1996), quoting Turner, supra at 89. Given what we have said, it is not a surprise that the treatment of the card as contraband meets this standard in terms of the four factors relevant to making that determination. See Cacicio, supra, citing Turner, supra at 89-91 ("[1] Is there a valid, rational connection between the regulation and the governmental interest put forward to justify it, and is the governmental interest legitimate and neutral; [2] do alternative means of 

 Page 564 

exercising the challenged right remain open to inmates; [3] will accommodating the challenged right have a significant 'ripple effect' on guards, other inmates, and the allocation of prison resources in general; and [4] does an alternative to the regulation exist which would fully accommodate the inmates' rights at de minimis cost to valid penological interests"). There is, first, given the summary judgment record, a rational connection between the determination that the card is contraband and the legitimate governmental interest in preventing the introduction of contraband into the prison. Second, there are alternative means of exercising the First Amendment right that remain open to prison inmates and their correspondents, in that it is only the use of the glitter pen that rendered the card contraband. Again, given the summary judgment record, accommodating the asserted constitutional right would have a deleterious impact on prison safety and administration, and, finally, there are no "obvious easy alternatives" to the rule articulated given the likely costs and difficulty of individual testing for contraband of every item containing glitter that might enter the prison. 

 3. Correspondence with inmate at another institution. This appeal involves a final piece of mail also sent to the plaintiff by Barbara Babcock, that plaintiff's grievance described as "a decision and order in the [F]ederal civil case of her son," sent to the plaintiff in order to obtain "legal advice and assistance." These documents were not forwarded to the plaintiff on the basis of 103 Code Mass. Regs. § 481.20, which provides, "An inmate may be permitted to correspond with an inmate confined in any other correctional or penal institution in the Commonwealth only if the other inmate is either a member of the inmate's immediate family or is a party in a legal action in which both inmates are parties representing themselves." Prison officials determined that this correspondence was forbidden "inmate to inmate correspondence" being sent through an intermediary, Babcock. [Note 7] 

 The plaintiff does not contest the factual determination that this was inmate-to-inmate correspondence, but asserts within his argument about the documents treated as publications that his receipt 

 Page 565 

of the documents was "permitted under Johnson v. Avery, 393 U.S. 483 (1969), which provides him with the protection as a jailhouse lawyer to assist other inmates in legal matters." Johnson struck down as an interference with the right of access to the courts a restriction on the ability of a prisoner to act as a "jail-house lawyer" in assisting a fellow prisoner in filing a petition for postconviction relief. The reasoning of the Court there included the observation that "the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system." Id. at 488. The defendants state that "it is true that inmates in the same facility may assist one another with legal work," but, noting that "the Department treats inmate correspondence

through a third party in the same manner as it would direct correspondence between two inmates at different facilities," asserts without elaboration that application of the inmate-to-inmate mail prohibition to correspondence from inmates in other facilities "passe[s] constitutional muster." As these arguments were made in the trial court but not addressed by the judge, we think the prudent course is to remand the case to allow them to be considered there in the first instance. 

 Conclusion. Thus, with respect to the claim concerning the card containing the writing in glitter pen, the judgment is affirmed. With respect to the claim concerning the inmate-to-inmate correspondence facilitated by Babcock, that portion of the judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. The portion of the judgment granting judgment to the defendants on the plaintiff's claim that the provision to the plaintiff of only five pages of the legal documents attached to correspondence was unlawful is reversed.

So ordered.

FOOTNOTES
[Note 1] Individually and in his capacity as superintendent of the Souza-Baranowski Correctional Center. 

[Note 2] Shelly Williams, Thomas Lynch, Roger Dery, Roberto Baez, and Vicki Pineda, individually and in their capacities as current or former employees of the Department of Correction. 

[Note 3] It is undisputed that this is the relevant version of the regulations. 

[Note 4] Under § 481.10(1), privileged mail includes 

"letters from the following persons . . . :

"(a) Any officer of a court of the United States, of the Commonwealth of Massachusetts, or of any court of any state of the United States (e.g., judge, government attorney, court clerk, parole board members; probation or parole officers);

"(b) The President or Vice President of the United States or the Governor of the Commonwealth of Massachusetts;

"(c) Any member of the Congress of the United States or any member (e.g., legislator) of the General Court of the Commonwealth of Massachusetts;

"(d) The Attorney General of the United States or the Attorney General of the Commonwealth of Massachusetts;

"(e) The Director or any agent of the Federal Bureau of Investigation; and

"(f) The Superintendent of the state correctional institution in which the inmate is confined, an Assistant Deputy Commissioner or Deputy Commissioner of Correction, or the Commissioner of the Massachusetts Department of Correction."

[Note 5] As discussed infra, there is a regulatory prohibition on inmate to inmate correspondence, but it "applies only to Department of Correction inmates incarcerated in a Department of Correction or county facility in Massachusetts," 103 Code Mass. Regs. § 481.20(5), and was not applied to the correspondence from the inmate in New Jersey. 

[Note 6] He argued below, as he does here, that these legal documents are not "publications" within the meaning of the regulations. The department's assertion at argument that his claim under the regulations is waived therefore is in error. 

[Note 7] As mentioned above at note 5, supra, "[t]he prohibition on inmate to inmate correspondence applies only to department of correction inmates incarcerated in a Department of Correction or county facility in Massachusetts." 103 Code Mass. Regs. § 481.20(5). This apparently explains why the prohibition was not applied to the incoming correspondence from the Massachusetts prisoner housed in New Jersey. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.